UNION COUNTY *v.* WARNER BROWN HOSPITAL

88-255                                                    762 S.W.2d 798

Supreme Court of Arkansas
Opinion delivered January 17, 1989

*Bill McLean*, Union County Prosecuting Attorney, by: John D. Lightfoot, for appellant.

*Spencer, Spencer, Depper & Guthrie*, by: *David F. Guthrie*, for appellee.

STEELE HAYS, Justice. When officers of the Union County Sheriff's Department attempted to serve a warrant for the arrest of Daniel Wilson, Wilson refused to submit to arrest and was wounded in a shoot-out with the deputies. An ambulance was called and Wilson was taken to the Warner Brown Hospital in El Dorado where medical services costing $9,724 were rendered.

Eventually the hospital filed suit against Wilson and the county for the amount claimed. Union County moved for summary judgment, contending that its only responsibility was to transport Wilson to a facility where medical services were available, and, having done that, the county was under no further obligation. *City of Revere* v. *Massachusetts General Hospital*, 463 U.S. 239 (1983).

The hospital also moved for summary judgment and the trial court took the motions under advisement.[1] Judgment was later

---

[1] A guardian ad litem was appointed for Wilson upon a finding that he was

awarded to Warner Brown Hospital against Union County and the county has appealed upon the contention there are material issues of fact remaining and, therefore, it was error to grant summary judgment. The county also asserts that the trial court's conclusions of law were clearly erroneous. We reject the arguments and affirm the judgment.

■ The remaining issues of fact asserted by Union County have to do with the conditions surrounding the delivery of Wilson to the hospital. It is contended that there should be a determination, for example, of whether the decision to bring him there was that of police officials or was solely that of the ambulance driver. It is also argued that there are issues concerning whether Wilson's condition was negligently caused by the county through the use of excessive force. We reject these contentions because they were not made before the trial court, and we need not consider them for the first time on appeal. *Sun Gas Liquids Co.* v. *Helena National Bank*, 276 Ark. 173, 633 S.W.2d 38 (1982).

■ As to the second point, appellant argues that there is no law imposing liability on Union County for the medical services furnished by the hospital, hence, for the trial court to rule as a matter of law for the hospital was clearly erroneous. We disagree. From the affidavits filed in support of the motions for summary judgment the following facts can be taken as undisputed: that Wilson was wounded by deputies of the Sheriff of Union County as they attempted to arrest Wilson for aggravated assault; that the ambulance which transported Wilson to Warner Brown Hospital was called by the deputies; that Union County had on numerous previous occasions utilized Warner Brown for emergency medical treatment of prisoners and had paid for such medical services; that Union County owned and operated a medical facility in El Dorado (Union Medical Center) capable of providing medical care to county prisoners. Those circumstances were sufficient for the trial court to hold, as it did, that Union County had an obligation to furnish emergency medical care to Wilson and a corresponding duty to pay for such care.

The appellant points out that the trial court did not rely on

incompetent.

any of our statutes dealing with payment of costs of services to persons held in county jails. For example, Ark. Code Ann. § 12-41-504 (1987), provides that the quorum court in each county shall prescribe the method and procedure for finding and keeping prisoners confined in the county jail "and shall provide for payment for food and services." Section 12-41-505 provides that every person committed to the common jail for "any criminal offense or misdemeanor," if convicted, shall pay the expenses of carrying such person to jail and for his support while he remains there. The provision subjects property of a prisoner to payment of such expenses. Section 16-92-105 (1987), provides that if sufficient property belonging to the defendant cannot be found to pay costs and fees, they shall be paid by the county, or, if the charges are dismissed by the prosecuting attorney, the costs shall be paid by the county. Here, the trial court reserved for later adjudication any rights of the county against Wilson under these statutes.

■ The county argues that Wilson was not yet a prisoner of the county, within the language of these enactments. However, we think it unnecessary to reach that question in order to affirm the judgment. The county presumes its obligation under *City of Revere* v. *Massachusetts General Hospital, supra,* extended no farther than to deliver Wilson to a facility where medical treatment was available. But the trial court, correctly we believe, construed *Revere* as imposing an obligation on the governmental entity to *supply* the necessary treatment and if it can obtain such treatment only by paying for it, then it must do so. That, in fact, is exactly what the decision states:

> If, of course, the governmental entity can obtain the medical care needed for a detainee only by paying for it, then it must pay. There are, however, other means by which the entity could meet its obligation. Many hospitals are subject to federal or state laws that require them to provide care to indigents. Hospitals receiving federal grant money from the Hill-Burton Act, for example, must supply a reasonable amount of free care to indigents. See 42 USC § 291c(e) [42 USCS § 291c(e)]. In the Commonwealth of Massachusetts now, any hospital with an emergency facility must provide emergency services regardless of the patient's ability to pay. Mass Gen Laws Ann, ch 111, § 70E(k) (West), added by 1979 Mass Acts, ch 214, and

amended by 1979 Mass Acts, ch 720. Refusal to provide treatment would subject the hospital to malpractice liability. § 70E. The governmental entity also may be able to satisfy its duty by operating its own hospital, or, possibly, by imposing on the willingness of hospitals and physicians to treat the sick regardless of the individual patient's ability to pay.

In short, the injured detainee's constitutional right is to receive the needed medical treatment; how the city of Revere obtains such treatment is not a federal constitutional question. It is not even certain that mandating government reimbursement of hospitals that treat injured persons in police custody would have the effect of increasing the availability or quality of care. Although such a requirement would serve to eliminate any reluctance on the part of private hospitals to provide treatment, it also might encourage police to take injured detainees to public hospitals, rather than private ones, regardless of their relative distances or ability to furnish particular services. (*Revere*, at p. 245).

We conclude that on the facts of this case, the trial court did not err in awarding judgment to the hospital and, accordingly, we affirm.