Mr. Larry Norris Director Arkansas Department of Correction Post Office Box 8707 Pine Bluff, Arkansas 71611-8707
Dear Mr. Norris:
This is in response to your request for an opinion on two questions relating to the transportation of inmates in the custody of the Arkansas Department of Correction (the "Department") to medical facilities located outside Arkansas for emergency medical treatment, or medical treatment that is required to preserve or restore an inmate's health but that is not available within the state. Your request notes that the Department's East Arkansas Regional Unit is much closer to Memphis, Tennessee, than to Little Rock, and states that it is necessary and desirable, from time to time, to transport a prisoner to Memphis rather than Little Rock for emergency or specialized medical treatment, owing to factors such as the urgency of the situation, prevailing weather conditions, the availability of emergency transportation to a particular location, and the availability of specialized medical expertise. You inquire whether:
 1. "inmates can legally be transported across state lines for medical care"; and
 2. "[Department of Correction] officers leaving the jurisdiction of Arkansas retain their powers as armed escorts having custody over these inmates."
You also request a "recommended plan of action" in the event an inmate must be transported out of state for medical treatment.
In my opinion, inmates may, and in some instances probably must, be transported across state lines for medical care. Prisoners have a right to needed medical care, and custodial states have a corresponding duty to provide such care, arising under U.S. Const. amend. 8, prohibiting cruel and unusual punishments. The state's "deliberate indifference" to an inmate's "serious medical needs" amounts to a constitutional violation.Estelle v. Gamble, 429 U.S. 97, 104 (1976); see Lair v. Oglesby, 14 F.3d 15
(8th Cir. 1993) (applying standard), and Union County v. Warner BrownHosp., 297 Ark. 460, 762 S.W.2d 798 (1989) (regarding duty of governmental units under U.S. Const. amend. 14 to provide medical treatment to detainees prior to trial).
Statutory law appears to permit the Department to transport inmates to any appropriate place to receive necessary medical care, whether or not the place is in another state. Arkansas Code Annotated § 12-29-401(b) (Cum. Supp. 1993)[1] provides:
 An inmate may be taken, when necessary, to a medical facility outside the institution, but the director shall provide ample safeguards for the custody of the inmate while confined in a medical facility outside the institution.
The statute requires medical necessity and ample security safeguards, but otherwise appears to leave other matters pertaining to medical treatment outside a correctional facility, including the location of the treatment facility, to the Department's discretion. This discretion is consistent with the Department's exclusive jurisdiction over the care of individuals committed to its custody. A.C.A. § 12-27-103(b)(1) (Cum. Supp. 1993).
With respect to your second question, it is my opinion that an inmate removed from a correctional facility for medical treatment remains in the legal custody of the Department (and in the physical custody of the Department's agents), notwithstanding the transportation of the inmate to a medical facility outside the state.
The Constitution requires each state to give full faith and credit to the judicial proceedings of each other state. U.S. Const. art. 4, § 1. In Inre Maney, 20 Wash. 509, 55 P. 930 (1899), local topographical conditions made it necessary to transport through the State of Washington prisoners who had been convicted in an Idaho court and who were in route to the Idaho penitentiary. During their passage through Washington, a petition for their release was filed in the Washington courts, alleging that the Idaho officer transporting them had no legal basis for holding them in custody. The Supreme Court of Washington disagreed, stating that the constitutional provision cited above required the prisoners' return to the Idaho officer. The court also held that the prisoners did not, under the facts of the case, become "fugitives from justice," and therefore were not entitled to require Idaho to seek their extradition from Washington.
Your request alludes to the fact that Department officers transporting inmates are armed, and seeks a recommended plan of action in the event out-of-state transportation of inmates becomes necessary. Because they involve research with respect to, and the interpretation of, the laws of other states, and the rendering of general legal advice, it is my view that an Attorney General's opinion is not the appropriate vehicle for resolving these matters and that the Department should seek the advice of its counsel in developing a plan of action. As your request suggests, any such plan should take into account the firearms laws of those states into which it is anticipated that the Department may take inmates. I know of no law or principle that would exempt Department officers from compliance with such laws in such circumstances.[2]
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] Act 291 of 1995 added a new subsection (c) to A.C.A. § 12-29-401, but did not amend subsection (b).
[2] I note the enactment of Act 719 of 1995, which provides that Arkansas law enforcement officers transporting inmates or defendants within Texas for the purpose of obtaining medical treatment are given limited authority to act as law enforcement officers within Texas with respect to the persons of whom they have custody. The act does not address transportation of inmates into any other state. In my opinion, the act does not imply that officers lack authority, in other states, to maintain custody of inmates taken there for medical treatment; rather, it is my view that the act codifies substantially what a court would hold the common law to be.