14440

UNITED STATES RUBBER PRODUCTS, INC., v. TOWN OF
BATESBURG

(190 S. E., 120)

50

April, 1936.

*Mr. George Bell Timmerman,* for appellant,

*Messrs. Blackwell & Smith,* for respondent,

February 25, 1937.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE A. L. GASTON.

The complaint in this suit was filed in January, 1936, and demands judgment for the value of certain fire hose and other accessories shipped during the years 1930 and 1931, by the Eureka Fire Hose Manufacturing Company. It is alleged in the complaint that the defendant is a municipal corporation, under the laws of this State with a population of over one thousand inhabitants; and that by virtue of Section 7439 of the Code of 1932, it has the power to control and equip, and maintains, a fire department for the protection of the town. The complaint further alleges that the fire hose was received and accepted by the defendant, used and consumed to a large extent, by it, in the operation of the fire

department of the town; that a part of the hose is still in use; that the hose is necessary and essential to the defendant and it has been benefited and enriched to the extent of the reasonable value of the said commodities.

The answer contains a general denial. The second defense is a denial that the hose was ordered or accepted from the plaintiff, or its assignor, by any officer or agent having authority to bind the defendant, except one item of 750 feet of hose, the purchase of which was authorized by the town council on July 6, 1931. It is also alleged that the defendant had no funds with which to pay for such purchase, as all available revenues for the current year had been previously pledged and appropriated to other purposes, and that the effect of said attempted contract to purchase the hose was an effort to illegally create a debt to be paid at a future date, as evidenced by the contract for the 750 feet of hose attempted to be executed on July 6, 1931.

Also, that the contract to purchase the hose is illegal because the payment of the purchase price was to be made out of taxes of another fiscal year and not out of current funds; and that no officer or agent of the town had the power thus to create a future obligation, or a bonded debt; and that the acts of the town council, or any officer or agent of the town, are *ultra vires*, in regard to the debt created by reason of the purchase of the hose.

The third defense is that the debt created is not authorized by law but violates the Constitution, because no election was held to authorize the creation of the debt, and because the current taxes were not available to pay the debt.

On plaintiff's motion, his Honor, Judge Dennis, granted an order to strike all of the allegations of the answer as to both the second and third defenses, and holding that the plaintiff is not suing upon contract, but for goods had and received.

The appeal is from this order. Appellant states that three issues are made by the exceptions. The first contention is

that the denial in the answer that the hose was ordered or received by an authorized agent of defendant is a valid defence. It is manifest that the complaint does not base the action upon a contract, but is for the recovery of the value of goods had and received by the defendant, as a municipality, which goods were necessary, essential, and beneficial to the defendant, for the operation of the fire department, and were actually so used, to the enrichment of the town in carrying on a legitimate corporate purpose and function.

The lack of authority of the officers, or agents, of the defendant to order or accept the goods in question is not germane to the issue made by the complaint. The defenses struck out by the Court do not deny that the goods were received or used by or in behalf of the defendant and for its benefit and gain, but only denies the authority of the defendant's agents to do so. The material issue under the allegations of the complaint is, not what the clamaint has parted with to officers who are not authorized to take the goods for the town, but whether the town has been benefited, and to what extent, or how much is the reasonable value of the goods had and received. The answer does not seek to establish as a defense any extravagant use by the agents of the town of its revenues, for goods not reasonably needed or required, for municipal purposes or squandered and misused, with the knowledge of the plaintiff or its assignor. There is no allegation that the defendant's agents acted in flagrant violation of a legal duty to order and receive fire hose and contrary to the public interest and welfare of the municipality, but merely that the goods were not ordered or received by an authorized agent of the defendant. The true test is the reasonable value of the goods received and used for corporate public purposes for the benefit of the defendant.

The case of *Luther v. Wheeler*, 73 S. C., 83, 52 S. E., 874, 4 L. R. A. (N. S.), 746, 6 Ann. Cas., 754, is in point. In that case the city council created a debt

against the town, evidenced by three notes, which would necessarily have to be paid by a future council, and out of taxes to be collected in another fiscal year, and the revenues of a future fiscal year would have to be applied to the payment of the debt contracted in a prior year. The debt was created for the purpose of building a town hall, market, and guard house. A note was executed to the Bank of Prosperity for money borrowed for this purpose. This Court held that a municipal corporation has the following powers and no others, to wit: (1) Those granted in express words; (2) those necessarily or fairly implied in, or incident to the powers expressly granted; and (3) those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. This Court held that the power to borrow money is not a necessary incident of municipal life; but there is an obvious difference between borrowing money, and contracting debts to third parties for the erection of buildings to be used for municipal purposes. This Court further held that the power to borrow money is a much larger and more dangerous power than the power to contract a debt either for labor or supplies, or for money had and received for the benefit of the town. In an action for goods or money had and received for the benefit of the town, he who furnishes goods or money can only recover for a debt arising from the actual benefit or enrichment of the town at his expense. The debt is valid if it was created for goods of another used by the town for legitimate corporate purposes authorized by law. In an action depending on the obligation or duty called *quasi* contract the measure of the recovery is the extent of the duty or obligation imposed by law, and is expressed by the amount which the Court considers the defendant has been unjustly enriched at the expense of the plaintiff. In an .action against the town for money or goods had or received, the question is not what the claimant has parted with to officers who were not in authority to take his money or goods for the town, or what

they have promised him, but how much has the town been benefited. The right to such a recovery is supported by the weight of authority. Therefore, the town is liable if the goods received were used for a municipal purpose impliedly authorized by the charter because reasonably necessary for the proper conduct of municipal affairs, in all cases where the town received the full benefit for the entire amount expended, or for the entire debt created, where the council had reason to believe and did believe that the entire debt thus created would be repaid from the regular income of the town for the current fiscal year. The proper municipal officers may contract debts for  services actually rendered and for money or goods had and received to the actual benefit of the town in the prosecution of authorized municipal work and in anticipation of the taxes or other revenue, and with a reasonable expectation at the time the work was commenced and expense incurred, that payment could and would be made from such expected revenue of the current year. The debt for money or goods had and received for the benefit of the town used in an enterprise authorized by law reasonably necessary for corporate purposes, the town receiving full value and the council believing, and having reason to believe, it would be paid from the revenue of the current year, is within the province and authority of the officers of the corporation.

The Constitution was adopted in view of the established rule to which we have adverted. An action for goods or money had and received stands on the judicial conception that the use by one person of the goods or money of another creates a debt which is valid, if not repugnant to the Constitution, nor in the face of positive constitutional or statute law that such debt shall not be contracted by a municipality, or only in a certain manner. The Constitution allows municipalities to contract debts which existing laws recognize as being within their province and authority to contract. This is the character of the present debt, its payment is authorized

by the general rules of law, and is not only not forbidden by the Constitution, or statute law, but on the contrary the authority to create such a debt is strongly implied in the Constitution itself. The Constitution must always be enforced and obeyed but there is no conflict found to exist in a case of this nature.

The debt being valid at its creation its validity is not affected by the fact that it turned out that the reasonable expectation of the council as to the ability to pay from anticipated revenues were not realized, or·even that the revenues received for the current year were exhausted by the application of them to other purposes. Even if the debt created exceeded the original estimate, it would not be rendered invalid, because the duty to prosecute the work begun in good faith, rather than incur the waste of abandoning it stands on nearly high ground of necessity as the ordinary expenses of the town.

It is clear under the authority of the case of *Luther v. Wheeler* that a debt created for supplies for protection against fire stands on very high grounds as being necessary for the equipment of the town and for the protection of the citizens and for the benefit of the taxpayers and, therefore, that the debt created therefor, if valid at its inception is not affected by the fact that it turned out that the taxes were not sufficient to pay the debt during the current fiscal year, or were exhausted for other purposes.

The first issue made by the exceptions cannot, therefore, be sustained and the exceptions raising such issue must be overruled. The allegation in the answer denying that the hose was ordered or accepted by any person, officer, or agent having authority to bind the defendant is not a valid affirmative defense. It fails to allege any facts to show that any person without authority acted in the matter. The complaint alleges that the town council of defendant has the power, under Section 7439 of the Code of 1932, to equip and control a fire department. The general ·

denial is sufficient to require proof of this allegation. If the acts in question were performed by *de facto* officers and not by *de jure* officers, this would not render the obligation to pay for goods had and received null and void upon the theory that such acts of the officers and agents of the defendant are *ultra vires*.

The term *"ultra vires"* is used to designate the acts of corporations beyond the scope of their powers as defined by their charters or by law. Certainly, therefore, if Section 7439 of the Code confers such powers upon a municipal corporation, the right to do so cannot be attacked as *ultra vires*. In the case of *Law et al. v. City of Spartanburg,* 148 S. C., 229, 146 S. E., 12, it was held that the legislature may authorize and require Spartanburg County to establish and maintain a tubercular hospital, as a valid exercise of the duty so to legislate as to provide an adequate and efficient system of county government, by conferring such powers upon a municipality, or county. In *Green v. City of Rock Hill,* 149 S. C., 234, 147 S. E., 346, it was held that a contract made by a city to extend its water mains and sewers, and to give access thereto in consideration of services performed or property conveyed to the city by the contractee, is not invalid and is not *ultra vires* nor in derogation of the city's police powers. In *Beattie v. City Council,* 113 S. C., 541, 102 S. E., 751, it was held in the Circuit decree which was affirmed on appeal, among other things, that when the City of Greenville was reorganized under the general laws of the State, the old charter creating the Board of Fire Commissioners ceased to operate, and since that time the Board of Fire Commissioners have been *de facto* officers and not *de jure* officers. It is clearly apparent that in no view of the issues involved in this case can it be sucessfully contended that the defendant is not liable by reason of any acts of its officers, on the ground of *ultra vires*. The Code confers the power upon the municipality to equip and maintain a fire department. The defendant has the express power to buy and

use fire hose, and cannot escape liability for payment of value of hose and other such goods had and received for its use and benefit. This rule has been applied not only to municipalities, but to a natural person and to an ordinary business corporation.

"These views are supported by many other adjudged cases. In *Central Transportation Co. v. Pullman's Car Co.,* 139 U. S., 24, 60, 11 S. Ct. 478, 35 L. Ed., 55, 68, the Court, speaking by Mr. Justice Gray, said: 'A contract *ultra vires* being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the Courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms, but on an implied contract of the defendant to return, or, failing to do that, to make compensation for property or money which it has no right to retain. To maintain such an action is not to affirm, but disaffirm, the unlawful contract.' " *Citizens' Central National Bank v. Appleton,* 216 U. S., 196, 30 S. Ct., 364, 366, 54 L. Ed., 443.

In *Marsh v. Fulton County,* 10 Wall., 676, 684, 19 L. Ed., 1040, the general principle of law relating to municipalities is expressed by United States Supreme Court in the following language: "We do not mean to intimate that liabilities may not be incurred by counties independent of the statute. Undoubtedly they may be. The obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation."

The second issue made by the exceptions must also be overruled. It has been repeatedly held by this Court that the power to contract debts for municipal purposes should be restricted to such debts as the council could reasonably expect and in good faith did expect to pay from the ordinary revenue of the town for the current fiscal year.

There are many cases in the State which sustain the legal obligation of a county, or other municipality, to pay debts where the claimant has acted in good faith and the county has received the full benefit of the transaction and the claimant has suffered the equivalent loss unless repaid; and holding that such debts, if they were contracted for charges imposed by statute and for supplies necessary to perform a statutory duty, are not debts contracted in violation of law forbidding the making of contracts in excess of funds on hand. *Farrish-Stafford Company v. Lexington County,* 100 S. C., 311, 84 S. E., 1002.

There is no necessity now, and certainly no intention, to deviate or depart from this wholesome and well-established principle of law.

The right to recover does not depend upon the promise to pay nor upon the strict legality of the manner of contracting the debt, but upon the judicial determination that the defendant has been unjustly enriched at the expense of the plaintiff.

The difference is fundamental and goes to the root of the transaction. The rule is expressed in *Luther v. Wheeler,* 73 S. C., 83, 52 S. E., 874, 877, 4 L. R. A. (N. S.), 746, 6 Ann. Cas., 754, as follows:

"Express contracts and contracts implied in fact depend upon the will of the parties to be bound, indicated in the one case expressly in some form recognized by law, and in the other by circumstances from which assent may be inferred as a conclusion of fact. *Quasi* contracts, or contracts

implied in law, are obligations imposed by law as duties, quite independent of the assent of the party held to be bound, and often in spite of his earnest dissent. In an action on an express contract, or a contract implied in fact, the measure of the recovery is ordinarily fixed by the promise. In an action depending on the obligation or duty called *quasi* contract, the measure of the recovery is the extent of the duty or obligation imposed by law, and is expressed by the amount which the Court considers the defendant has been unjustly enriched at the expense of the plaintiff. If a recovery were allowed against a municipal corporation on a note for money borrowed, the judgment must be for the amount of the note, however large, and though the money may have been squandered. But in an action against a town for money had and received, the question is not what the claimant has parted with to officers who were not authorized to take his money for the town, or what they have promised him, but how much has the town been benefited. If the money was squandered, there can be no recovery; if it was used extravagantly, for buildings or enterprises not reasonably necessary for municipal purposes, there can be no recovery beyond the actual benefit. This view, it will be seen, leaves no room to say that a promise to pay back money is implied where no valid contract can be made, or that allowing any recovery for money had and received subjects the town to the same peril as to admit the unrestricted right of a municipal council to borrow money. * * *

"For it is to be observed that while a recovery for money had and received does not require either an express contract or a contract implied in fact to support it, yet it does require for its support a debt imposed by law, and where the Constitution or statute law of the State forbids, not only the borrowing of money, but the incurring of any debt, or that a debt, to be valid, must be created under certain restrictions, as, for instance, that it must have the sanction of taxpayers or voters expressed at an election, then there can be no re-

covery for money had and received. In its last analysis, the action for money had and received stands on the judicial conception that the use by one person of the money of another creates a debt; but this judicial conception manifestly could have no application to municipal corporations in the face of positive constitutional or statute law that no debt shall be contracted by a municipality or that a debt shall be contracted only in a certain manner. * * *

"But, as we have seen, the power to borrow money is a much larger and more dangerous power than the power to contract a debt, either for labor or supplies, or for money had and received for the benefit of the town. In the one case, the lender has only to show that the proper corporate officer received the money, and his right to recover does not in the least depend upon the benefit accruing by the actual application of the money; in the other, he who furnishes money can only recover for a debt arising from the actual benefit or enrichment of the town at his expense. The exclusion by omission, therefore, of towns of less than 1,000 inhabitants from the provision allowing towns to borrow money in anticipation of the collection of taxes does not necessarily imply an intention to deny such towns the power to create a debt of any kind in anticipation of the collection of current taxes."

If the "tax anticipation" debt is within the reasonable estimate of the unpaid taxes due and collectible, it will be sustained. *Sullivan v. City Council of Charleston,* 133 S. C., 189, 133 S. E., 340.

For in an action for goods had and received, the law looks to the validity of the obligation, rather than to the validity of the contract.

In the case of *Lucas v. City of Florence,* 103 S. C., 169, 87 S. E., 996, the following from the opinion of the Circuit Court was affirmed by the judgment of the Supreme Court:

"The plaintiff, a citizen, freeholder, and taxpayer of the City of Florence, brings this action to enjoin the issue and

sale of bonds in the sum of one hundred and forty thousand ($140,000.00) dollars by the city council of Florence for the purpose of refunding an indebtedness incurred in paving certain streets and in making certain extensions, alterations, and improvements in the waterworks system of the city.  *  *  *

"Of course, under the doctrine announced in *Luther v. Wheeler,* 73 S. C., 83, 52 S. E., 874, 4 L. R. A. (N. S.), 746, 6 Ann. Cas., 754, if the city received the benefit of such contracts,  *  *  *  it would be liable on the doctrine of money had and received."

The case of *Vann v. Jasper County,* 122 S. C., 53, 114 S. E., 704, involved the liability of the defendant for work done by an accountant. The statute provided that the employment of accountants should be approved by the presiding Judge. Such approval was not had before the work was done, but the work was actually done by plaintiff and approved by the Judge subsequently presiding. There being no suggestion of fraud, excessive compensation, or nonfulfillment of the contract, the plaintiff was allowed to recover under the authority of the cases of *Luther v. Wheeler* and *Lucas v. City of Florence, supra.*

In the case of *Peurifoy v. Boswell,* 162 S. C., 107, 160 S. E., 156, 163, was involved certain promissory notes executed by Clarendon County, S. C., for borrowed money. In discussing the liability of Clarendon County for the payment thereof, the Court used the following language: "Whether these notes were or were not negotiable is not a factor of importance in this case. Even if Clarendon County had no legal authority to borrow this money, but received and used the proceeds of the notes, they would constitute an obligation of Clarendon County for money had and received. *Luther v. Wheeler,* 73 S. C., 83, 52 S. E., 874, 4 L. R. A. (N. S.) 746, 6 Ann. Cas., 754; *Lucas v. City of Florence,* 103 S. C., 169, 87 S. E., 996."

In the very recent case of *City of Spartanburg v. Leonard,* 180 S. C., 491, 186 S. E., 395, 398, in which was involved the question of the right of the City of Spartanburg to redeem an outstanding issue of waterworks bonds, the Circuit Court decree, affirmed by this Court, holds: "But, if the bonds as issued fail substantially to comply with the enabling act, then the bonds are void. *Bolton v. Wharton,* 163 S. C., 242, 161 S. E., 454, 86 A. L. R., 1101. If the bonds are void, the bondholders must recover the indebtedness represented by the bonds on the theory of money had and received. . *Luther v. Wheeler,* 73 S. C., 83, 52 S. E., 874, 4 L. R. A. (N. S.), 746, 6 Ann. Cas., 754. If the bonds are void, the indebtedness represented by them is simply money owed by the City of Spartanburg to the extent of the benefit derived from the loan."

The third and last question raised by the appellant is stated as follows, to wit: "Was it proper to strike so much of answer as alleged that the debts sued on were intended to be paid out of revenues of future fiscal years and, therefore, in legal effect, were attempts to create bonded debts for future payments without compliance with the statutory and constitutional requirements as to issuing bonds?"

The present suit is not for the enforcement of the payment of a note. It is impossible, therefore, for a mere debt not evidenced by any contract in writing to be held to constitute the issuing of bonds. It has always been held that a bond is an instrument in writing, usually under seal, binding the obligor to pay a sum of money to the holder of the written obligation or bearer. There are numerous cases in this State holding that promissory notes not under seal, secured primarily by a tax levied upon all the taxable property therein, must be considered as a part of the bonded debt of a political subdivision of this State under the Constitution. *Thomson v. Christopher,* 141 S. C., 92, 139 S. E., 178; *Lillard v. Melton,* 103 S. C., 10, 87 S. E., 421.

In the case of *Luther v. Wheeler* it was held that a town of less than one thousand inhabitants had no authority by statute law to contract a debt of any description whatever, not even to anticipate in any way the collection of taxes for the current fiscal year, and therefore that the note executed by the Town of Prosperity was given entirely without authority and was of no force against the town, but should be recognized as a symbol of the debts by the banks who handled it. It was further held that the note was without validity and did not represent the debt as between the town and the bank, but that the real debt was the amount of money actually received and used. In the present case the real debt is not a note or bonds, but is the value of the hose and accessories actually received and used. By no process of reason can the real debt which is now being sued upon be construed to constitute a bonded debt, nor was the creation of this debt equivalent to the issuing of bond.

Even if it be considered a part of the floating debt of the town which could not be paid out of current taxes because it turned out that the reasonable expectations of the council as to the ability to pay from anticipated revenues were not realized, or even that the revenues received for the current year were exhausted by the application of them to other purposes, this would not affect the validity of the debt.

"Section 3, Article 8, of the Constitution, provides that no debt shall be 'contracted except in pursuance of law, for public purposes specified by law.' But this section is necessarily modified by Section 7, which follows, and allows indebtedness to be incurred in anticipation of the collection of taxes. There is in this last section no specification of any particular purposes for which such debts may be contracted, and the meaning, therefore, manifestly is, they may be contracted for any legitimate corporate purpose."

All exceptions are overruled, and the judgment is affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate.