21577

PIEDMONT PREMIUM SERVICE, INC., Respondent, v. SOUTH CAROLINA INSURANCE COMPANY, Appellant.

(283 S. E. (2d) 828)

*R. Bruce Shaw* and *Thornwell F. Sowell, III,* of *Nelson, Mullins, Grief & Scarborough,* Columbia, *for Appellant.*

*Robert C. Wilson, Jr.,* of *Haynesworth, Perry, Bryant, Marion & Johnstone,* Greenville, *for respondent.*

September 30, 1981.

LEWIS, Chief Justice:

This appeal is taken from a judgment for actual and punitive damages entered for respondent after jury trial of an action for breach of contract. The complaint alleged that the appellant had wrongfully refused to return certain monies paid to the appellant's agent and that this breach of contract was accompanied by misrepresentations amounting to a fraudulent act. At trial the appellant made timely motions for a directed verdict and for judgment notwithstanding the verdict, which motions were denied. We affirm the holding of the trial court as to actual damages but reverse as to the award of punitive damages.

At the time this controversy arose, the respondent was engaged in premium financing, which is the business of providing loans to prospective purchasers of insurance. The typical transaction consists of a loan agreement by the terms of which a lender makes premium payments directly to the insurer on behalf of a customer. This practice is called "premium servicing" in South Carolina and is governed by statute. See Section 38-27-10 et seq., Code of Laws of South Carolina, 1976.

The record discloses that respondent provided premium servicing for automobile insurance to customers of Southern Surety of Greenwood, a "designated agent" of the appellant within the meaning of Section 38-37-150, Code. There is no dispute that Southern Surety was authorized to act as the appellant's agent in the collection of insurance premiums and was known to the respondent as such. Dispute arises over certain payments made by the respondent to Southern Surety which were coverted by the latter to its own use. These wrongful conversions took several forms: in some instances, payments on legitimate insurance applications were diverted out-

right; in other cases, fraudulently inflated premium amounts were quoted to the respondent and the premium payments were then appropriated wholly or in part; finally, fictitious or forged insurance applications were submitted to the respondent to generate loans the proceeds of which were retained by Southern Surety.

Ultimately this scheme was discovered, but not before the respondent had made substantial payments. It appears that the respondent attempted to cancel the policies of some of its defaulting customers prior to the discovery of wrongdoing by Southern Surety. After the fraud was revealed, its demands for reimbursement were renewed but were steadfastly rejected by the appellant. This suit followed.

The common law rule, of course, is that a party lacking a contractual relation or privity with an insurer cannot recover premiums that are paid as a loan to the insured even where payment is made directly to the insurer's agent. 44 C. J. S., Insurance, Section 405(b), p. 1389; Couch on Insurance, (2d) Edition, Section 31.164. The testimony at trial clearly dispelled any notion of an express contract between these parties, and on this basis the respondent would ordinarily have no claim against the appellant for recovery of its payments.

We find, however, that Section 38-27-100(e) Code of Laws of South Carolina, 1976, creates a contract implied in law: "a duty imposed by law and treated as a contract for the purpose of a remedy only." 17 C. J. S., Contracts, Section 4(b), p. 563. Under this provision, and subject to certain rules, a lender is permitted to cancel a customer's insurance policy after default in repayment of the premium loan and recover unearned premiums directly from the insurer. In other words, where a lender can show the existence of a valid premium service agreement, the payment thereunder of premiums to an insurer or its agent, a default in repayment by the insured, and compliance by the lender with other provisions of Section 38-27-100, Code, the insurer is obligated by law to return unearned premiums to the lender. Failure or refusal so to do would support a cause of action for breach of contract.

Without objection the trial court instructed the jury with reference to Code Section 38-27-100(e). The record shows that such crucial questions of fact as the existence of valid premium service agreements or the actual payments to the appellant through Southern Surety were vigorously contested at trial. It is clear that reasonable persons could disagree as to the conclusions to be reached from the testimony, which compels submission of the case to a jury. We cannot say that the verdict for actual damages was utterly without support in the record and are therefore bound to sustain it.

Our finding is otherwise with respect to the award of punitive damages. Reviewing the record in the light most favorable to the respondent, we can find no competent evidence of a fraudulent intent or fraudulent act accompanying the failure of the appellant to refund the unearned premiums. The trial court erred in submitting this issue to the jury since the evidence is susceptible of only one reasonable inference. *Gray v. Barnes,* 244 S. C. 454, 137 S. E. (2d) 594.

The holding of the trial court is affirmed as to the recovery of actual damages and reversed as to the award of punitive damages, and judgment entered accordingly.

LITTLEJOHN, NESS, GREGORY and HARWELL, JJ., concur.