532 S.E.2d 868

**MYRTLE BEACH HOSPITAL, INC., d/b/a Grand Strand Regional Medical Center, Petitioner,**

v.

**CITY OF MYRTLE BEACH and Myrtle Beach Police Department, Respondents.**

No. 25140.

Supreme Court of South Carolina.

Heard April 18, 2000.

Decided June 5, 2000.

2

Fred B. Newby and Michael H. Sartip, both of Newby, Pridgen & Sartip, of Myrtle Beach, for petitioner.

James B. Van Osdell and Charles B. Jordan, Jr., both of Van Osdell, Lester, Howe & Jordan, P.A., of Myrtle Beach, for respondents.

PLEICONES, Justice:

We granted certiorari to decide whether the Court of Appeals was correct in holding that a city is not obligated to pay a hospital for medical care rendered to the city's pretrial detainees. *Myrtle Beach Hospital v. City of Myrtle Beach,* 333 S.C. 590, 510 S.E.2d 439 (Ct.App.1998). We affirm the Court of Appeals holding that the Hospital cannot recover under any of the theories it advances, but modify the *quantum meruit* test used by the Court of Appeals.

## FACTS

Respondents (the City) operate a lock-up facility to house pre-trial detainees. Pursuant to the City's policy, if a detainee needs medical attention, the facility contacts the Horry County Emergency Medical Services (EMS) to evaluate and treat the detainee. If EMS determines further treatment is required, it transports the detainee to petitioner Hospital, which operates the only hospital emergency room in Myrtle Beach. As a result of this policy, the Hospital has accrued approximately $300,000 in unpaid medical bills.[1] When the City refused to pay these bills, the Hospital brought this action.

---

1. The City's policy is to pay the bills if the treatment is required because of an injury occurring during the arrest or as the 'direct result' of the incarceration.

The parties filed cross-motions for summary judgment, and the circuit court granted the City's motion, finding no theory under which it was responsible for these bills. On appeal, the Court of Appeals affirmed. *Myrtle Beach Hospital, supra.*

The parties agree that the City is required by the Federal Constitution to ensure that a detainee receives necessary medical care. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983) (due process requires that detainees be provided medical care).[2] Whether the governmental entity holding the detainee or the medical provider should bear the cost of medical care rendered to the detainee is a matter of state law. *City of Revere*, 463 U.S. at 245, 103 S.Ct. 2979. Whether South Carolina law requires the City to pay for the medical care received by its detainees is the issue here.

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Quality Towing, Inc. v. City of Myrtle Beach*, 340 S.C. 29, 530 S.E.2d 369 (2000). There are no contested facts here.

## ISSUES

(1) Is the City obligated to pay the medical bills of its detainees because this duty should be implied from statutes or regulations?;

(2) Do public policy considerations impose a duty upon the City to pay the bills?;

(3) Is there an obligation to pay on the part of the City, arising from an implied-by-law contract or from *quantum meruit?*

## ANALYSIS

### A. Legislative Intent

The Hospital acknowledges, as it must, that no state statute requires the City to bear the medical expenses of the pretrial

---

**2.** Although *City of Revere* involved the specific question of the duty owed to an individual injured by municipal police officers in the performance of their duties, we agree with the parties and other courts considering the issue that the reasoning in *City of Revere* applies with equal force to the duty owed to pretrial detainees.

detainees. It relies instead on "legislative intent," gleaned from several statutes imposing duties upon the Department of Corrections (DOC) regarding inmates or upon counties with regard to chain gangs, and from a "regulation" promulgated by the DOC. We will discuss the regulation first.

■ Pursuant to S.C.Code Ann. § 24–9–20 (Supp.1999), every municipal lock-up facility such as the one operated by the City is subject to an annual inspection by a division of the DOC. The inspection "shall be based on standards established by the South Carolina Association of Counties and adopted by the [DOC]...." *Id.*

Pursuant to this mandate, the DOC promulgated a document entitled "Minimum Standards for Local Detention Facilities—Type I Facilities—Overnight Lockup" (the Minimum Standards). The Hospital refers to certain of the provisions of the Minimum Standards and especially relies on Section 2054:

2054 EMERGENCIES. Each facility shall provide twenty-four (24) hour emergency medical and dental care availability, as outlined in a written plan which includes arrangements for:

(a) Emergency evacuation of inmates from the facility

(b) Use of an emergency medical vehicle

(c) Use of one (1) or more designated hospital emergency rooms or other appropriate health facilities

(d) Emergency on-call physician and dentist services when the emergency health facility is not located in a nearby community.

According to the Hospital, this "regulation" evinces a legislative intent that the City bear the cost of medical services rendered to the detainees. We disagree.

These Minimum Standards have never been subject to the legislative scrutiny afforded regulations under the Administrative Procedures Act.[3] Instead, they are merely the product of the County Association, adopted by the DOC, an executive

---

3. *Cf. Stuckey v. State Budget and Control Bd.,* 339 S.C. 397, 529 S.E.2d 706 (2000) (Toal, J., dissenting) (would not bind affected person to regulation not promulgated pursuant to APA).

agency. They cannot validly be viewed as expressing anything about legislative intent.[4]

■ Looking at the actual legislative intent expressed in our statutes, we find that it undermines rather than supports the Hospital's position. The Hospital points to statutes expressing the State's policy to render "humane treatment" to persons serving a term in the State Penitentiary, S.C.Code Ann. § 24-1-20 (1989); to one instructing that the DOC director is responsible "for the proper care, treatment, feeding, clothing, and management of the prisoners confined therein", S.C.Code Ann. § 24-1-130 (Supp.1999); a statute requiring certain entities using state convicts to reimburse the DOC for "moneys expended ... for medical attention...." S.C.Code Ann. § 24-1-160 (Supp.1999); and, to provisions made for the comfort and treatment of prisoners in county jail [§ 24-5-80 and § 24-7-70 (1985) ] and of convicts working on chain gangs. §§ 24-7-60; 24-7-80; 24-7-110 (1985).

In our view, these statutes express the legislative intent that jailers (whether county or state) are to bear the expenses, including those incurred in rendering health care, for persons incarcerated following their convictions. Applying the maxim of statutory interpretation *expressio unius est exclusio alterius*, the absolute silence of the Legislature on the subject of expense allocation, or even minimal living standards, for the pretrial detainees held in municipal facilities defeats any "legislative intent" claim.[5]

We agree with the Court of Appeals that Hospital cannot prevail on its "legislative intent" theory.

B. Public Policy

■ The Hospital contends that "public policy" requires that the City pay the medical bills incurred by the detainees.

---

4. This is not to suggest that the DOC could not be held to its duty to adopt standards, or to conduct inspections of local facilities pursuant to § 24-9-20; or that the City would not be subject to sanctions for failure to abide by these regulations. *See* S.C.Code Ann. § 24-9-30 (Supp. 1999) "Enforcement of minimum standards."

5. The absence of specific legislation does not, however, mean that municipalities may treat pretrial detainees inhumanely or with deliberate indifference, or consciously disregard their rights.

As discussed above, the Legislature has chosen not to impose a duty upon the City under these circumstances. Further, the only indirect evidence we can find regarding a South Carolina municipality's duty to pay is a 1960 opinion by the Attorney General determining that there is no such obligation. 1960 Op. Atty. Gen. 293.[6]

The Hospital relies heavily on opinions from other jurisdictions to support its argument that we should find a duty to pay arising from public policy. All these cases, except those decided by Arkansas [7] and Nebraska,[8] involve the construction of state statutes or regulations imposing certain duties upon jailers.[9] Our review of these decisions convinces us that whether to reallocate the financial burden of indigent predetainee medical care, and the method of any such reallocation, is one best left to the legislative process which is better equipped to allow input from all interested parties. We therefore affirm the Court of Appeals' conclusion that public policy does not compel the City to reimburse the Hospital for these costs.

C.   Implied by law contract or *quantum meruit*

The Hospital argues that the Court of Appeals should have required respondents to pay the bills under either a theory of *quantum meruit* or contract implied by law. We disagree.

---

**6.** *Compare* 1899 Op. Atty. Gen. 204, stating that a **county** would be liable for the medical treatment afforded a prisoner wounded while being arrested, if the prisoner were in custody.

**7.** *Union County v. Warner Brown Hosp.,* 297 Ark. 460, 762 S.W.2d 798 (1989).

**8.** *Lutheran Medical Center v. City of Omaha,* 229 Neb. 802, 429 N.W.2d 347 (1988).

**9.** Although the Court of Appeals concluded that North Carolina represented a minority view, we disagree. North Carolina imposes a duty on the governmental entity to pay medical expenses incurred by persons in its custody. *Spicer v. Williamson,* 191 N.C. 487, 132 S.E. 291 (1926). This duty arises from a state statute requiring the county to provide medical attention to persons confined in the county jail. In *Craven County Hospital v. Lenoir County,* 75 N.C.App. 453, 331 S.E.2d 690 (1985), relied upon by the Court of Appeals, the issue was whether the governmental entity owed a duty to pay medical bills incurred by a person who was not in custody at the time of the injury.

First, we correct a misstatement of law which first appeared in 1981. Prior to our decision in *Piedmont Premium Service, Inc. v. South Carolina Ins. Co.*, 277 S.C. 99, 283 S.E.2d 828 (1981), we used the terms *quantum meruit*, quasi-contract, and contract implied by law as equivalent terms, to distinguish those situations where equity would aid recovery from those where law provided the remedy, that is, express contracts or contracts implied in fact.[10] *See, e.g., United States Rubber Products, Inc. v. Town of Batesburg*, 183 S.C. 49, 190 S.E. 120 (1937); *Rainwater v. Hobeika*, 208 S.C. 433, 38 S.E.2d 495 (1946). In a law action, the measure of damages is determined by the parties' agreement, while in equity, "the measure of the recovery is the extent of the duty or obligation imposed by law, and is expressed by the amount which the court considers the defendant has been unjustly enriched at the expense of the plaintiff." *Town of Batesburg*, 190 S.E. at 126.

■ In *Piedmont Premium, supra*, we erroneously defined a contract implied by law as resting on "a duty imposed by law and treated as a contract for purposes of remedy only." *Id.*, 283 S.E.2d at 829. *Piedmont Premium* directly quoted 17 C.J.S. *Contracts* § 4(b) as the source of this definition of a contract implied by law (equitable). In fact, § 4(b)[11] is a discussion of **implied in fact** (legal) contracts. We overrule *Piedmont Premium* to the extent it erroneously defines a contract implied by law and return to our original view: *quantum meruit*, quasi-contract, and implied by law contract are equivalent terms for an equitable remedy.

■ Further, we note this Court's current test for *quantum meruit* differs from that used by the Court of Appeals, and further note a discrepancy between the two courts' implied by law tests. Interestingly, the Court of Appeals' implied by law test is the same as this Court's *quantum meruit* analysis:

(1) benefit conferred by plaintiff upon the defendant;

---

10. *See Stanley Smith & Sons v. Limestone College*, 283 S.C. 430, 322 S.E.2d 474 fn. 1 (Ct.App.1984) ("The unfortunate use of "implied contract" to connote both true ("implied in fact") and quasi ("implied in law") contracts has led to much confusion").

11. Now found at 17 C.J.S. Contracts § 6(b) (1999) following a 1999 revision. *See* section conversion chart at p. 398 of volume 17.

   (2) realization of that benefit by the defendant; and

   (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value.

*Compare, e.g., Columbia Wholesale Co. v. Scudder May, N.V.,* 312 S.C. 259, 440 S.E.2d 129 (1994) (*quantum meruit* test) with *Webb v. First Fed. Sav. & Loan Ass'n,* 300 S.C. 507, 388 S.E.2d 823 (Ct.App.1989) (implied by law test).

We adopt the *Scudder May* test as the sole test for a *quantum meruit*/quasi-contract/implied by law claim. We therefore overrule the following cases to the extent they rely on this different *quantum meruit* test first announced by the Court of Appeals in *Webb v. First Fed. Savings & Loan Ass'n, supra:*

   (1) valuable services or materials were furnished;

   (2) to the defendant;

   (3) who accepted, used and enjoyed them;

   (4) under such circumstances as reasonably notified the defendant that the plaintiff was expecting to be paid by the defendant.

*Bonaparte v. Bonaparte,* 317 S.C. 256, 452 S.E.2d 836 (1995); *Myrtle Beach Hosp. v. City of Myrtle Beach,* 333 S.C. 590, 510 S.E.2d 439 (Ct.App.1998); *Wade v. Brooks,* 306 S.C. 553, 413 S.E.2d 333 (Ct.App.1992); *Muller v. Myrtle Beach Golf & Yacht Club,* 303 S.C. 137, 399 S.E.2d 430 (Ct.App.1990) *cert. dismissed* 305 S.C. 330, 408 S.E.2d 242 (1991); and *Webb v. First Fed. Savings & Loan Ass'n,* 299 S.C. 1, 382 S.E.2d 4 refiled 300 S.C. 507, 388 S.E.2d 823 (Ct.App.1989).

■ Applying the *Scudder May quantum meruit* test in this case, we hold that the Hospital cannot prevail on this equitable theory. The first two elements are that the City received and retained a benefit. Here, it is the detainee rather than the City that receives and retains the benefits conferred by the Hospital.[12] Further, since the only duty on the City is that imposed by the Due Process Clause of the federal constitution, and since that duty is fulfilled "by seeing that [the

---

**12.** To be sure, the City receives an incidental benefit in the sense that the existence of the Hospital facilitates the City's constitutional duty to ensure the detainee receives necessary medical care.

detainees are] taken promptly to a hospital that provide[s] the treatment necessary for his injury," *City of Revere*, 463 U.S. at 245, 103 S.Ct. 2979, we do not perceive any inequity in not requiring the City to reimburse the Hospital.[13]

For the reasons given above, the decision of the Court of Appeals is

**AFFIRMED AS MODIFIED.**

TOAL, C.J., MOORE, WALLER, and BURNETT, JJ., concur.

---

**13.** The Hospital may seek to recover, as it now does, its expenses from the detainee, his private insurance, or from federal or state indigent medical care funds if available. We simply decide that, as between the City and the Hospital, equity does not require the City to bear these costs.