THIS
 OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of
Appeals

 
 
 
 Environmental Solutions International, Inc., Appellant,
 v.
 J.C. Construction, Inc., Wolfe Creek Construction, Inc., and
 Woolpert L.L.P.,
 of whom:
 J.C. Construction, Inc. is Respondent.
 
 
 

Appeal from Colleton County
 Jackson V. Gregory, Circuit
Court Judge

Unpublished
Opinion No. 2008-UP-282
Submitted June
1, 2008  Filed June 2, 2008

AFFIRMED

 
 
 
 R. Clenton Campbell and Grahame E.
 Holmes, both of Walterboro, for Appellant.
 Amanda A. Bailey and M. Mark McAdams, both
 of Myrtle Beach, for Respondent.
 
 
 

PER CURIAM:  Environmental
 Solutions International, Inc. appeals the trial judges grant of summary
 judgment, contending the trial judge committed error in finding no issue of
 material fact as to whether ESI was compensated for services rendered to J.C.
 Construction, Inc., thus barring claims under quantum meruit and breach of
 contract.  We affirm.[1]
FACTS
In
 May 2003, Respondent J.C. Construction, Inc. (JCC), a general construction
 company, successfully submitted a bid for a project to refurbish a waste water
 treatment facility for the Town of St. Matthews, South Carolina.  One aspect of
 the workload required JCC to remove and dispose of sludge from the treatment facilitys
 basins.  To effectuate the sludge removal, JCC solicited bids for this portion
 of the work and subcontracted with Appellant Environmental Solutions
 International, Inc. (ESI) in November 2003.  ESI agreed to payment of $108.00
 per ton of sludge removed.  The scope of the sludge removal was based on an
 estimate by Woolpert, L.L.P. (Woolpert), an engineering consultant hired by the
 town, and was limited by the terms of the contract.  Under the subcontract, ESI
 was required to:

 Remove, solidify, transport and dispose
 of approximately 350 tons of waste treatment sludge.  Payment to be determined
 by measure of sludge hauled to the landfill.  The unit cost rate of $108.00 per
 ton hauled shall apply (as per the project bid form).  Approximate total
 commitment for accounting purposes only is $37,800.00.

After
 contracting with JCC, ESI hired Wolfe Creek Construction, Inc. (Wolfe Creek) to
 perform the actual removal.  In December 2003, ESI and Wolfe Creek began the
 removal process.  A number of delays plagued the project from the beginning
 resulting from leakage in sludge dewatering containers, inclement weather, and
 the lengthy process required to dry the sludge.  Additionally, the total amount
 of sludge requiring removal greatly exceeded the scope originally estimated by
 Woolpert.  In response to this discovery, ESI submitted a change order to JCC,
 increasing the scope of removal from 350 tons to 5,000 tons to reflect
 Woolperts error in the original estimate.
In
 April 2004, ESI quit work and left the jobsite, leaving behind a
 partially-filled dewatering bag of sludge, various equipment, and sawdust used
 in solidifying the sludge.  In May 2004, ESI faxed JCC a new agreement demanding
 a price increase from $108.00 per ton to $220.00 per ton for the sludge removal. 
 ESI alleged the price increase was in line with the increased costs associated
 with the larger workload which would require more personnel and different
 equipment in order to meet the project deadlines.  JCC never accepted this
 agreement and solicited new bids in order to facilitate the removal.  Wolfe
 Creek offered to complete the project, subcontracted with JCC, and completed
 all remaining sludge removal.  Wolfe Creek compensated ESI for the materials
 left behind at the jobsite by giving ESI a $10,350.00 credit.  The credit memo
 sent to ESI by Wolfe Creek noted the credit was for time, materials, and labor
 exhausted in filling the remaining bag and for three loads of ESIs sawdust.  
Thereafter,
 ESI filed suit against several parties including JCC over the subcontract for
 sludge removal.  ESI alleged JCC was liable for breach of contract, quantum
 meruit, conversion, and intentional interference with contractual relations. 
 JCC moved for summary judgment on all causes of action.  At the hearing, ESI
 withdrew its claim of conversion.  Subsequently, the trial judge granted JCCs
 Motion for Summary Judgment as to all of ESIs claims.  
DISCUSSION
ESI alleges there are genuine issues of
 material fact as to whether it was paid under the contract for (1) the total amount
 of sludge hauled to the landfill and (2) for the sludge pumped into dewatering
 bags but left at the jobsite, and therefore, the grant of summary judgment was
 inappropriate as to the claims for quantum meruit and breach of contract.  We
 disagree.  
In order for a motion of summary
 judgment to warrant denial, a triable issue must exist.  Worsley Cos., Inc.
 v. Town of Mount Pleasant, 339 S.C. 51, 55, 528 S.E.2d 657, 660 (2000).  A
 court considering summary judgment neither makes factual determinations nor
 considers the merits of competing testimony; however, summary judgment is
 completely appropriate when a properly supported motion sets forth facts that
 remain undisputed or are contested in a deficient manner.  David v. McLeod
 Regl Med. Ctr., 367 S.C. 242, 250, 626 S.E.2d 1, 5 (2006).    
In
 the case at bar, ESI has failed to raise a genuine issue of material fact it
 was not compensated for services provided to JCC.  The record is barren of
 evidence to support this contention.  Therefore, the trial judges grant of
 summary judgment was appropriate.  
ESI
 alleges it was not paid for the amount of sludge it disposed of according to
 the terms of the contract and for the amount of sludge it pumped into
 dewatering bags and left at the jobsite.  However, ESI did not properly support
 these claims to the extent necessary to raise a genuine issue of material
 fact.  As in this case, summary judgment is completely appropriate when facts
 are contested in a deficient manner.  See David, 367 S.C. at 250,
 626 S.E.2d at 5.
1. 
 Sludge Removal Fully Performed under the Terms of the Contract
ESI alleges that it was not paid for the
 350 tons of sludge removed, transported, and disposed of at the dump.  Based on
 our review of the record, this issue is not preserved.  Even if preserved, the
 issue fails on the merits.  
This sludge removal was specifically
 covered by the terms of the contract.  ESI performed under the contract by
 disposing of approximately 350 tons of sludge and would have a cause of action
 for breach of contract against JCC if JCC failed to pay for these services.  However,
 sufficient evidence is not contained in the record to support this contention.  
The cause of action for breach of
 contract requires the plaintiff to establish the following elements:  (1) the
 existence of a contract, (2) a breach of the contract, and (3) damages to the
 plaintiff proximately resulting from the breach.  Fuller v. Eastern Fire
 & Cas. Ins. Co., 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962).  A breach
 occurs when a party to the contract fails to carry out a term, promise, or
 condition of the contract.  See Freeman Dodge, Inc. v. Fin. Servs.,
 Inc., 272 S.C. 164, 249 S.E.2d 897 (1978) (finding finance companys
 failure to offer car back to dealership as required by the terms of the
 contract was breach).
ESI has failed to produce evidence
 supporting the elements required for a breach of contract action.    Looking to
 the pleadings, depositions, answers to interrogatories, and admissions on
 file, together with the affidavits in the record, ESI did not present
 sufficient evidence of a breach by JCC to create an issue for trial.  See Rule 56(c), SCRCP.   
It
 is undisputed JCC and ESI entered into a mutual contract.  By the terms of the
 contract, ESI was required to [r]emove, solidify, transport and dispose of
 approximately 350 tons of waste treatment sludge.  After disposal of the
 sludge, JCC was required to pay ESI according to the measure of sludge hauled
 to the landfill.  To establish a breach, ESI was required to prove JCC did not
 pay for sludge removal complying with the terms of the agreement.  However, there
 is no evidence in the record suggesting JCC failed to compensate ESI for the
 work it performed.  The only evidence offering insight into JCCs payment for ESIs
 services is the deposition of Brian Larry Penfield, Jr. (Penfield), the
 president and owner of ESI.  In his deposition, Penfield testified:

 Q:  Okay.  And do you know how much
 money J.C. Construction paid you?
 A:  Without pulling it out I do not
 know, sir.
 Q:  So you have no idea as you sit here
 today whether they paid you the entire $38,000, do you?
 A:  Not right this moment I do not.
 Q:  All right.  As we sit here today can
 you tell me what services or materials that you provided to my client, J.C.
 Construction that you were not compensated for?
 A:  Well, the contract for the first 350
 tons and first $37,800 I would say that that there was falling in line with the
 $108 a ton and then due to circumstances either caused by delays, change orders
 and other nature like that, that the materials that was in the bag on the
 bottom of the hill and the prevention of moving further with the job since we
 were basically . . . when we put a work stoppage in to try and get things
 hashed out it prevented us from making up the rest of the money, particularly
 time, the cost of the bags.  We had multitude of down days to where we drove up
 there and we couldnt do anything, some of which may have been in our error but
 some of which were not, so those are the things that I think that should be
 calculated in regard to that.  

In the appellants brief, ESIs counsel
 concedes this testimony confirms ESI was paid for the first 350 tons of sludge
 removal but argues that Penfields testimony was erroneous and inaccurate. 
 While counsel maintains that Penfield was mistaken and ESI was not paid for the
 sludge removal fully performed, no additional evidence is offered anywhere in
 the record to support this contention.     
Given Penfields uncertain testimony and
 the lack of other supporting evidence, this court does not find a genuine issue
 of material fact as to whether ESI was paid under the contract.  Although
 Penfield appears to be unsure as to what amount he received from JCC at the
 time of the deposition, the testimony establishes ESI was paid.  When asked
 what services ESI was not compensated for, Penfield seems to suggest ESI wants
 payment for the sludge pumped into the dewatering bags and left at the jobsite
 and the costs associated with delays as opposed to the money due under the
 original terms of the contract.  His response to the question is ambiguous at
 best.  This ambiguity is not sufficient to raise a genuine issue of material
 fact sufficient for trial on the claim ESI was not paid for work fully
 performed under the contract.  Facts contested in a deficient manner cannot
 overcome a properly supported motion for summary judgment.  
After JCC established a lack of
 evidentiary support for the case, the burden shifted to ESI to prove the
 existence of a genuine issue of material fact.  See Regions Bank v.
 Schmauch, 354 S.C. 648, 660, 582 S.E.2d 432, 438 (Ct. App. 2003).  A party
 opposing a motion for summary judgment must allege facts clearly showing a
 material issue for trial and cannot rely on a mere scintilla of evidence to
 overcome the motion.  See Thomas v. Waters, 315 S.C. 524, 526,
 334 S.E.2d 659, 661 (2001).  ESI failed to meet this burden.  Looking to Rule
 56(c), SCRCP, we are limited to examining the pleadings, depositions, answers
 to interrogatories, admissions on file, and affidavits to find a genuine issue
 of material fact warranting a denial of a grant of summary judgment.  Based on
 the record in this case, no such factual dispute exists to support the claim
 ESI was not compensated for the sludge removal fully performed under the
 contract.  Therefore, the grant of summary judgment was proper in regards to
 this claim.  
2. 
 Excess Sludge Pumped into Dewatering Bags without Disposal
Additionally, ESI is seeking recovery
 for sludge removed in excess of the terms of the contract and left in
 dewatering bags at the jobsite without proper disposal.  ESI alleges it is
 entitled to recover for this work under a theory of quantum meruit, or in the
 alternative, under a claim for breach of contract.  
Quantum meruit is an equitable remedy.  Columbia Wholesale v. Scudder May N.V., 312 S.C. 259, 261, 440 S.E.2d 129,
 130 (1994); Landbank Fund VII, LLC v. Dickerson, 369 S.C. 621, 630, 632
 S.E.2d 882, 887 (Ct. App. 2006).   In a law action, the measure of damages is
 determined by the parties agreement, while in equity, the measure of the
 recovery is the extent of the duty or obligation imposed by law, and is
 expressed by the amount which the court considers the defendant has been
 unjustly enriched at the expense of the plaintiff.    QHG of Lake City,
 Inc. v. McCutcheon, 360 S.C. 196, 203, 600 S.E.2d 165, 108 (Ct. App. 2004)
 (quoting Myrtle Beach Hosp. v. City of Myrtle Beach, 341 S.C. 1, 8, 532
 S.E.2d 868, 872 (2000) (quoting United States Rubber Prods., Inc. v. Town of
 Batesburg, 183 S.C. 49, 55, 190 S.E. 120, 126 (1937))).    
To prevail on a quantum meruit claim,
 the following elements must be established:  (1) the plaintiff conferred a
 benefit to the defendant; (2) the defendant realized the benefit; and (3) the
 defendant retained the benefit under circumstances making it inequitable for
 the defendant to retain the benefit without paying its value.  Myrtle Beach Hosp., 341 S.C. at 8-9, 532 S.E.2d at 872; Landbank, 369 S.C. at
 630, 632 S.E.2d at 888; QHG of Lake City, 360 S.C. at 203-204, 600
 S.E.2d at 108; Swanson v. Stratos, 350 S.C. 116, 121, 564 S.E.2d 117,
 119 (Ct. App. 2002).  However, [i]f the tasks the plaintiff is seeking
 compensation for under a quantum meruit theory are encompassed within the terms
 of an express contract which has not been abandoned or rescinded, the plaintiff
 may not recover under quantum meruit.  Swanson, 350 S.C. at 122, 564
 S.E.2d at 120 (citing 66 Am.Jur.2d Restitution and Implied Contracts §
 81 (2001) ([I]t is a defense to an action in quantum meruit that there is an
 express contract covering the issue of compensation for services or materials
 furnished.)); see also Texcon, Inc. v. Anderson Aviation, Inc.,
 284 S.C. 307, 326 S.E.2d 168 (Ct. App. 1985) (finding master erred in allowing
 recovery in quantum meruit where express contract existed).
In Ro-Lo Enterprises v. Hicks Enterprises, Inc., 294 S.C. 111, 113-114, 362
 S.E.2d 888, 889 (Ct. App. 1987), this Court addressed what constitutes
 abandonment of a contract:  

 Abandonment of contract by one
 party is the giving up of the right to a benefit due from the other party.  Pitcher
 v. Lauritzen, 18 Utah 2d 368, 423 P.2d 491 (1967).  A contract will be
 treated as abandoned when the acts of one party inconsistent with its existence
 are acquiesced in by the other party.  Sauder v. Dittmar, 118 F.2d 524 (10th
 Cir. 1941); 17 Am.Jur.2d Contracts Section 484 (1964).  To constitute
 abandonment of contract by conduct, the actions relied upon must be positive,
 unequivocal, and inconsistent with the existence of a contract.  Mood v.
 Methodist Episcopal Church South, 289 S.W. 461 (Tex. Civ. App. 1926).  

The
 abandonment of a contract is a matter of intention to be ascertained from the
 facts and circumstances surrounding the transaction from which the abandonment
 is claimed to have resulted.  Quality Concrete Products, Inc. v. Thomason,
 253 S.C. 579, 589, 172 S.E.2d 297, 302 (1970).  An abandonment of a contract
 need not be express but may be inferred from the conduct of the parties and the
 attendant circumstances.  Id.  [A]n abandonment of the contract involves
 a breach of the implied obligation of good faith and fair dealing.  U.S. ex. rel. William Elec. Co., Inc. v. Metric Constructors, Inc., 325 S.C.
 129, 135, 480 S.E.2d 447, 450 (1997).  
ESI
 cannot recover under a theory of quantum meruit if the work they are seeking
 compensation for is covered under the terms of an express contract.  However, if
 the express contract has been abandoned, recovery under quantum meruit may be
 possible.  In this case, an express contract covered the task for which ESI is
 seeking recovery, but ESI abandoned the contract when it unilaterally decided
 to quit the project.  This abandonment cannot allow ESI to recover under
 quantum meruit.  ESI left the jobsite, demanded an increase in price, and
 refused to perform any further work until JCC consented.  ESI sent a new
 service agreement to JCC stating, along with a price increase to $220.00 per
 ton removed:  

 This cost will include all of the
 changes and the clarifications that Woolpert Engineering has imposed for this
 project.  No trucks can be loaded until there is an agreement signed and
 returned.  ESI will still need to obtain a new purchase order for the
 remaining sludge to reflect the cost changes as well as change orders signed
 and placed by Woolpert to insure it is done by the new specifications.  

(emphasis added).
In
 response to this demand, JCC hired another company to complete the remaining
 tasks.  ESIs abandonment was a breach of contract and does not open the door
 to a claim under quantum meruit.  Therefore, ESI was barred from recovery.  
Furthermore,
 ESI is not entitled to recover for breach of contract until it fully performs
 under the terms of the contract.  By failing to properly transport and dispose
 of the sludge pumped into the dewatering bags, ESI did not complete performance. 
 Due to this failure, ESI was not yet entitled to compensation under the terms
 of the contract and cannot recover for breach of contract.  
3. 
 Ambiguity in the Contract
Additionally,
 ESI argues the contract was ambiguous by stating approximately 350 tons of
 waste treatment sludge.  Because approximately could be subject to conflicting
 interpretation, the question of whether the additional sludge removed is
 covered by the terms of an express contract is disputed.  If the additional
 sludge removal was not covered by an express contract, recovery under quantum
 meruit may be allowed.  
In HK New Plan Exch. Prop. Owner I, LLC v. Coker, 375 S.C. 18, 23, 649
 S.E.2d 181, 184 (Ct. App. 2007), we discussed the effect of an ambiguous contract
 on a motion for summary judgment:  

 Generally, the
 construction of a contract is a question of law for the court.  Soil
 Remediation Co. v. Nu-Way Envtl., Inc., 325 S.C. 231, 234, 482 S.E.2d 554,
 555 (1997).  Where a motion for summary judgment presents a question as to the
 construction of a written contract, if the language employed by the agreement
 is plain and unambiguous, the question is one of law.  First-Citizens Bank
 Trust Co. v. Conway Nat'l Bank, 282 S.C. 303, 305, 317 S.E.2d 776,
 777 (Ct. App. 1984).  In such a case, summary judgment is proper and a trial
 unnecessary where the intention of the parties as to the legal effect of the
 contract may be gathered from the four corners of the instrument itself.  Id.
 However, summary
 judgment is improper where the motion presents a question as to the
 construction of a written contract, and the contract is ambiguous because the
 intent of the parties can not be gathered from the four corners of the
 instrument.  Bishop v. Benson, 297 S.C. 14, 17, 374 S.E.2d 517,
 518-19 (Ct. App. 1988).  Where a contract is unclear, or is ambiguous and
 capable of more than one construction, the parties' intentions are matters of
 fact to be submitted to a jury.  Wheeler v. Globe Rutgers Fire Ins. Co. of
 City of N.Y., 125 S.C. 320, 325, 118 S.E. 609, 610 (1923).

Typically, when a contract is ambiguous
 and a question of fact is raised to its interpretation, summary judgment would
 not be appropriate.  However, in this case, regardless of the interpretation of
 the contract, ESI would not be entitled to recover.  
If an express contract covered the excess
 sludge removed, then ESI would be limited to a recovery in breach of contract. 
 However, due to the fact ESI breached the contract and did not fully perform,
 it would be unable to recover.  
If the additional sludge removal was not
 covered by the contract because of the ambiguity of the term approximately,
 ESI would still be unable to recover under a theory of quantum meruit.  Before
 recovery is allowed, quantum meruit requires the defendant to retain a benefit
 under circumstances that make it inequitable for the defendant to do so without
 paying value.  In this case, it would not be inequitable for JCC to retain the
 benefit of ESIs work because there was no inequitable conduct on the part of
 JCC leading to the removal.  ESI submitted a change order requesting an
 increase in tonnage removed to 5000 tons.  However, ESI failed to present any
 evidence JCC agreed to this increase.  Because it proceeded without a valid
 agreement, ESI bore the risk of not receiving a benefit for its services. 
 Therefore, recovery for the excess sludge removal is inappropriate under a
 theory of quantum meruit.  
In his deposition, Penfield testified to
 his understanding of the parties agreement regarding the disposal of
 additional sludge:

 Q:  Okay.  You would agree with me that
 this contract doesnt give you any more rights than to basically haul away 350
 tons of sludge?
 . . . 
 A:  I think there was also a change
 order sent in part to remove it . . . turn it to, I think 1,800 tons or so.  
 Q:  Was that change order ever signed by
 my client?
 A:  That I dont know, sir.  
 Q:  Well, Ill show it to you.  Im
 going to hand you what has been marked as Exhibit Number Four to your
 deposition.  
 . . . 
 Q:  What is that, for the record,
 please?
 A:  That is a change in calculation
 after we tried to meet every one of the change orders that had been placed upon
 us. 
 Q:  And in that you raised the price,
 you basically gave a quote that sais (sic), Hey, well do this for 200 bucks a
 ton, is that correct?
 A:  Thats correct.
 Q:  In the second paragraph it says, No
 trucks can be loaded until there is an agreement signed and returned.
 A:  Thats correct.
 Q:  Okay.  So what youre doing is
 youre saying my company will do this if we enter into an agreement for this
 price to be $220, is that correct?
 A:  Yes, sir.  
 . . . 
 Q:  Well, they didnt agree to this did
 they, to Exhibit Number Four?  They didnt agree to pay two and a half times .
 . . 
 A:  No, sir, they never signed it and
 sent it back.
 Q:  Right so you didnt have an
 agreement to do any more work out there, did you?
 A:  In the terms that youre putting it,
 no sir.
 Q:  Well, you put it right here that you
 werent going to load any trucks until they signed the agreement, didnt you?
 A:  Thats correct.  

The
 deposition of Laverne Anderson (Anderson) establishes JCCs understanding of
 the agreement regarding any additional sludge removal beyond the terms of the
 contract.  Anderson explained:  

 [W]e had ESI under contract, which is
 drawn up to meet our needs, and we had won the contract to remove 350 tons and
 thats it.  And then if we chose to do so, to continue working with him, we
 could issue him a change order at the same unit rate he gave us to complete the
 job.  But he left the job because he hadnt paid his suppliers, he pulled off,
 he couldnt remove the sludge.  

Nothing
 in the record establishes any agreement between JCC and ESI for the removal of
 sludge beyond the terms of the original contract.  If the original contract had
 expired, ESI pumped the additional sludge without an agreement with JCC.  ESI
 cannot perform work without any agreement in place and then argue it is
 entitled to compensation.  Without evidence indicating it would be inequitable
 for JCC to retain this benefit, ESI is not entitled to recover under quantum
 meruit.  
Furthermore, we note ESI received a
 credit from its subcontractor, Wolfe Creek, for time, materials, and labor
 exhausted in filling the remaining bag and for three loads of ESIs sawdust.  This
 credit compensated ESI for expenses it incurred in pumping the excess sludge
 into the dewatering bags before ESI abandoned the jobsite.  Even though ESI did
 not receive as much as it desired for the excess removal, the credit ensured
 that ESI was repaid for the incurred costs.  Therefore, equity does not require
 JCC to further compensate ESI for this work.   
CONCLUSION
ESI has not presented a theory of
 recovery for which it is entitled to prevail based on the evidence contained in
 the record.  Regardless of whether the contract is ambiguous, the grant of
 summary judgment is appropriate.  Accordingly, the grant of summary judgment is 
AFFIRMED.
ANDERSON, HUFF, and KITTREDGE, JJ.,
 concur.

[1] We decide this case
 without oral argument pursuant to Rule 215, SCACR.