Larry **REGISTER** and Esther Houlihan, Plaintiffs,

v.

**CAMERON & BARKLEY COMPANY,** Cambar Software, Inc., GreatBanc Trust Company, Hagemeyer North America, Inc., Mary Lou Fox, David L. Lea, Steven L. Raber, Thomas A. Skelton, Tom Stallings, James Warren, M. Joel Bateman, J. Randall Bishop, Cecil Duffie, Cheryl A. Blocker, Paula P. Greer, Debra J. Guest, David G. Gundling, Saundra Gussman, Deborah B. Holden, Allison Mahoney, Amy Mahoney, Andros Neocleous, Christopher C. Nowell, Kim Palmer,

Raymond J. Perlock, Jeffrey S. Rosenberg, Kenneth B. Sands, William T. Tamsberg, Hagemeyer P.P.S. N.A. Profit Sharing 401(K) Plan, Cambar Software, Inc. Employee Stock Ownership Plan, Defendants.

C.A. No. 2:03–cv–2672–PMD.

United States District Court,
D. South Carolina,
Charleston Division.

Nov. 3, 2006.

See, also, 2006 WL 3735394.

John E. Schmidt, III, Kerry B. McTigue, Melissa J. Copeland, Michael S. Cashman, Nelson Mullins Riley and Scarborough, Columbia, SC, for Plaintiffs.

Kenneth Michael Barfield, Morris Dawes Cooke, Jr., Barnwell Whaley Patterson and Helms, Stephen P. Groves, Thomas S. Tisdale, Jr., Nexsen Pruet Jacobs Pollard and Robinson, Bruce E. Miller, Moore and Van Allen, Charleston, SC, Steven Thomas Catlett, Paul Hastings Janofsky and Walker, Carrie E. Kienstra, Mark E. Furlane, Gardner Carton and Douglas, Chicago, IL, Curtis Warren Stodghill, Stodghill Law Firm, Greenville, SC, Gregory C. Braden, Leslie M. Bassett, Michael G. Monnolly, Sean K. McMahan,

Alston and Bird, Atlanta, GA, David R. Levin, Gardner Carton and Douglas, Washington, DC, for Defendants.

### ORDER

DUFFY, District Judge.

This matter is currently before the court on Defendant GreatBanc Trust Company's ("GreatBanc") Motion to Dismiss Plaintiffs Larry Register and Esther Houlihan's ("Plaintiffs") Second Amended Complaint (the "Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants Hagemeyer North America, Inc. ("Hagemeyer"), Cameron & Barkley Company ("C & B"), M. Joel Bateman, J. Randall Bishop, Paula P. Greer, Kenneth B. Sands, William T. Tamsberg, James Warren, Paula P. Greer, Debra J. Guest, David G. Gundling, Sandra Gussman, Deborah B. Holden, Andros Neocleous, Christopher C. Nowell, Kim Palmer, Raymond Perlock, and Jeffrey S. Rosenberg (collectively, the "C & B Defendants")[1] have also filed a Motion to Dismiss, adopting the reasoning set forth in Defendant Great-Banc's Memorandum.

Defendants Cambar Software, Inc. ("CSI"), Mary Lou Fox, David L. Lea, Steven L. Raber, Thomas A. Skelton, Cecil Duffie, Cheryl Blocker, Allison Mahoney, Amy Mahoney, and Thomas Stallings (collectively, the "CSI Defendants"),[2] have filed a Motion to Dismiss Counts I through IV and Counts VI through VIII of Plaintiffs' Second Amended Complaint, adopting the arguments set forth in Defendant GreatBanc's Memorandum. The CSI Defendants do not object to Count V of the Second Amended Complaint, which asserts a cause of action only against Defendant CSI.

For the reasons set forth herein, Defendants' Motions to Dismiss are granted in part and denied in part.[3]

### BACKGROUND

The relevant facts of this case, as alleged in the Complaint, are as follows:

Plaintiffs Larry Register and Esther Houlihan are employees or former employees of Defendants C & B and CSI. As employees, Plaintiffs participated in these companies' Employee Stock Ownership Plans ("ESOPs"). Plaintiffs allege that, at all relevant times, C & B, CSI, and each of the named individual Defendants were fiduciaries of the ERISA-governed plans and were co-fiduciaries of the other Defendants.[4] [Complaint ¶¶ 52, 55.]

---

1. At all times relevant to this action, M. Joel Bateman, J. Randall Bishop, Paula Greer, Kenneth B. Sands, William T. Tamsberg, and James Warren were members of the C & B ESOP Advisory Committee. Paula Greer, Debra J. Guest, David G. Gundling, Sandra Gussman, Deborah B. Holden, Andros Neocleous. Christopher C. Nowell, Kim Palmer, Raymond Perlock, and Jeffrey Rosenberg were members of the Administrative Committee of the Hagemeyer Plan or its predecessor, the Cambar 401(k) Plan.

2. At all times relevant to this action, Mary Lou Fox, Thomas A. Skelton, and Steven L. Raber were member of the CSI Board of Directors. David L. Lea was the President and/or acting Chief Executive Officer of C &

B. Cecil Duffie is the current Chief Executive Officer of CSI. Cheryl Blocker, Allison Mahoney, Amy Mahoney, and Thomas Stallings were members of the CSI ESOP Advisory Committee.

3. For purposes of this order, the court refers to GreatBanc, the CSI Defendants, and the C & B Defendants collectively as "Defendants." Defendant Hagemeyer P.P.S. N.A. Profit Sharing 401(k) Plan ("Hagemeyer Plan") has also filed a separate Motion to Dismiss. The court addresses this motion in a separate Order.

4. Plaintiffs do not allege that the Hagemeyer Plan or the CSI ESOP were fiduciaries of the

C & B was a distributor of maintenance, repair and operating products to the electrical construction industry. It formed C & B Employee Stock Ownership Plan ("C & B ESOP") in 1975. C & B ESOP was an employee pension benefit plan within the meaning of 29 U.S.C. § 1002(2)(A), and was administered in South Carolina.

C & B created Cambar Software, Inc. ("CSI") in 1981. CSI employees were eligible to and did participate in the C & B ESOP. As a result, certain participants in the C & B ESOP were allocated shares of both C & B and CSI stock, as well as a share of the C & B ESOP's other assets. Other participants were allocated shares of either C & B or CSI stock, but not both, as well as a share of the C & B ESOP's other assets.

In or around September of 2000, C & B entered into an agreement whereby Hagemeyer would acquire complete ownership of C & B, but not CSI ("Merger Agreement"). Because Hagemeyer was not interested in purchasing CSI, the Merger Agreement separated the C & B ESOP into two plans, the C & B ESOP and a new CSI ESOP. Participants were classified as either "C & B Participants" or "CSI Participants," depending on where they were currently or last employed. Plaintiffs were classified as CSI Participants. CSI Participants, and their accompanying assets and liabilities, were to be spun off to the new CSI ESOP. C & B Participants were to remain in the C & B ESOP, which was to be incorporated into a profit sharing 401(k) plan sponsored by Hagemeyer.

Upon consummation of the merger, each share of C & B's common stock was converted into $736.45 per share in cash and

the contingent right to receive a pro rata share of the amount to be distributed from an indemnity escrow fund. At this point, the still intact C & B ESOP contained only CSI common stock and other assets, including cash from the conversion of the C & B stock. C & B Participants were given the option of rolling over their share of the distribution either into a 401(k) plan or into an individual retirement account ("IRA"). CSI Participants were told by Defendant GreatBanc that their shares of the distribution would be placed into a cash account which would be securely invested. Plaintiffs allege, however, that the CSI Participants' distributions were actually placed into an account for other CSI assets under the C & B ESOP.

Using the cash from the sale of C & B stock, CSI then bought back common shares in itself from the C & B Participants. For purposes of this exchange of CSI stock for cash, the CSI stock was severely overvalued. This overvalued stock plummeted in value after the spin-off. As a result, CSI Participants' retirement funds, including the retirement funds of Plaintiffs, are worth a small fraction of what they were worth prior to the merger and spin-off.

While the merger was still pending, some participants were awaiting distributions from the C & B ESOP. On December 11, 2000, at the direction of the C & B ESOP's Advisory Committee, GreatBanc made a distribution to Rufus Barkley, an officer or member of the Board of Directors of C & B. For the distribution, C & B ESOP cashed out Barkley's account which had been allocated a total of 2113.11 shares of CSI stock. At the time, the C & B ESOP fiduciaries had valued CSI stock at the inflated price of $28.64 per share.[5] On December 22, 2000, the C & B ESOP

---

C & B ESOP or co-fiduciaries to the other Defendants.

5. The Complaint alleges that, since its inception in 1988, CSI's stock was consistently valued in the range of $10 to $15.

Advisory Committee authorized the payment of benefits to other participants awaiting distributions. These participants also received distributions for their allocations of CSI stock at the inflated price of $28.64 per share. As a result of these distributions, certain current and past executives and employees of C & B received a profits wind-fall, while persons such as Plaintiffs were left with CSI stock worth far less than it had originally been worth.

Plaintiffs also allege that they requested from CSI plan documents covering years 1987, 1988 and 1989 on January 9, 2002. According to the Complaint, CSI refused to provide the plan documents covering these years until November 30, 2003.

### STANDARD OF REVIEW

■ A Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of its claims that entitles it to relief. *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999). The complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. *Mylan Labs. Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993). Further, "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose,* 467 F.2d 29, 33 n. 5 (4th Cir.1972). If, on a motion to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleading are presented

to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. Fed.R.Civ.P. 12(b).

■ In adjudicating motions to dismiss under Rule 12(b)(6), the court must apply the notice pleading requirements of Fed. R.Civ.P. 8(a)(2). Rule 8(a)(2) provides that a complaint need provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has interpreted Rule 8 "not to require a claimant to set out in detail the facts upon which he bases his claim." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (internal quotations omitted); *see Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998) (finding that a complaint need not allege "any" facts).

Plaintiffs' Complaint alleges the following ERISA-based causes of action against the fiduciaries of the C & B ESOP and the CSI ESOP: [6]

(I) breach of fiduciary and co-fiduciary duties by authorizing and making exchanges of CSI stock for what the fiduciaries knew or should have known was more than the fair market value in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A)-(D) and 29 U.S.C. § 1105 [Count I, Complaint ¶ 56];

(II) breach of fiduciary duty to monitor the plan and duty of loyalty to the plan in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A)-(B) [Count II, Complaint ¶¶ 65–68];

(III) breach of fiduciary duty with respect to offsets of accrued pension benefits with artificially inflated

---

**6.** In paragraph 52 of the Complaint, Plaintiffs assert that C & B, CSI, and each of the named Defendants are fiduciaries under ERISA. Plaintiffs do not allege that the Hagemeyer Plan or the CSI ESOP were fiduciaries of the

C & B ESOP; accordingly, the court finds that Plaintiffs have not asserted these ERISA-based causes of action for breach of fiduciary duty against them.

CSI stock in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A)-(D) [Count III, Complaint ¶¶ 75–78];

(IV) breach of fiduciary and co-fiduciary duties by failing to monitor the conduct of the investing fiduciaries and failing to disclose to the investing fiduciaries material facts concerning CSI's financial condition in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A)-(B) and 29 U.S.C. § 1105 [Count IV, Complaint ¶¶ 82–84]; and

(V) Defendant CSI violated ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4),[7] by failing to promptly respond to Plaintiffs' request for the governing Summary Plan descriptions.

As a result of the Defendant fiduciaries' breaches of their duties, Plaintiffs allege that the value of the stock the CSI Participants received in the merger and spinoff of the plans was wrongfully diminished. As such, they and the other CSI Participants' suffered actual losses to their individual CSI ESOP accounts. [Complaint ¶¶ 61, 74, 77, 86.] Because the fiduciaries' violations of ERISA allegedly resulted in real losses to Plaintiffs and to the other participants of the CSI ESOP, Plaintiffs seek in Counts I, II, III, and IV both (1) equitable relief pursuant to ERISA §§ 502(a)(3), 29

U.S.C. 1132(a)(3), and (2) recovery for losses to the Plan caused by Defendants' breaches of their fiduciary duties pursuant to ERISA § 502(a)(2), 29 U.S.C. 1132(a)(2), and § 409(a), 29 U.S.C. § 1109(a). [Complaint ¶¶ 58, 59, 62, 69, 79, 87.] Further, in Count V of the Complaint, Plaintiffs allege that they were prejudiced by CSI's failure to timely provide plan documents, in violation of ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4). [Complaint ¶ 91.] Accordingly, Plaintiffs assert that they are entitled to $110 per day commencing thirty days after the first request for information was made to the date of Defendant CSI's response to the request, as provided by ERISA § 502(c); 29 U.S.C. § 1132(c).[8] [Complaint ¶ 92.]

In addition to these claims under ERISA, Plaintiffs also assert the following causes of action:

(VI) quantum meruit recovery "from the C & B ESOP [for] the benefits that [Plaintiffs] have conferred on it by bringing and prosecuting this action" as it would be unjust for "the Defendant C & B ESOP to retain these benefits without paying its value"[9] [Complaint ¶¶ 94–97];

(VII) making materially false or misleading statements or omitting to

7. Section 104(b)(4) of ERISA provides that "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

8. ERISA § 502(c) 29 U.S.C. § 1132(c) provides that "[a]ny administrator ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this Act to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the

control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, ... each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation".

9. The court notes, in confusion, that the C & B ESOP is not a named defendant in this action. In their memorandum in opposition

state material facts necessary to make a statement not misleading in connection with the purchase or sale of a security in violation of Section 10 of the Securities Exchange Act of 1934, 17 C.F.R. § 240. 10(b)(5) [Complaint ¶¶ 99–102]; [10]

(VIII) engaging, within the last ten years, in a pattern of racketeering activity which used the interstate mail system as prohibited under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c); the racketeering activity was the conspiracy to defraud Plaintiffs in violation of 18 U.S.C. § 664, which makes it a crime to embezzle, steal, or unlawfully and willfully abstract moneys, securities or funds from an employee welfare benefit plan [Complaint ¶¶ 105–108]. [11]

## DISCUSSION

GreatBanc's Motion to Dismiss asserts that the Complaint fails to state a claim for which relief may be granted and should therefore be dismissed. Fed.R.Civ.P. 12(b)(6). Specifically, GreatBanc asserts

that, Counts I, II, III, and IV fails to allege "losses to the plan" as required for recovery under § 502(a)(2) of ERISA. In the alternative, GreatBanc asserts that the ERISA causes of action for equitable relief should be dismissed for failing to join indispensable parties under Rule 19 of the Federal Rules of Civil Procedure.[12] GreatBanc also claims that the quantum meruit claim asserted in Count VI attempts to seek a remedy in addition to those remedies already available under ERISA; accordingly, GreatBanc claims that this cause of action is preempted by ERISA. Further, GreatBanc asserts that Count VII fails to allege facts that could support a claim under the federal securities laws, and Count VIII fails to allege the predicate acts or the pattern of racketeering activity that are the necessary elements of a RICO claim. The CSI Defendants and the C & B Defendants join GreatBanc in all of these arguments.[13]

**A. Counts I, II, III, and IV—Accepting all well-pleaded allegations in the Complaint as true, do Plaintiffs state a claim for recovery of monetary losses to the plan pursuant to ERISA §§ 409(a) and 502(a)(2)?**

Defendants argue that Counts I, II, III, and IV, which seek to recover losses to the

to Defendants' Motions to Dismiss, Plaintiffs explain that this is a typographical error. Plaintiffs intended to name all Defendants on this count.

**10.** Plaintiffs assert this cause of action only against Defendants C & B, CSI, GreatBanc, Mary Lou Fox, David L. Lea, Steven L. Raber, Thomas A. Skelton, Tom Stallings, James R. Warren, M. Joel Bateman, J. Randall Bishop, Paula P. Greer, Cecil Duffie, Cheryl A. Blocker, Allison Mahoney, Amy Mahoney, Kenneth B. Sands, and William T. Tamsberg (hereinafter "10(b)(5) Defendants").

**11.** Plaintiffs assert this cause of action only against Defendants C & B, CSI, GreatBanc, Mary Lou Fox, David L. Lea, Steven L. Raber,

Thomas A. Skelton, Tom Stallings, James R. Warren, M. Joel Bateman, J. Randall Bishop, Paula P. Greer, Cecil Duffie, Cheryl A. Blocker, Allison Mahoney, Amy Mahoney, Kenneth B. Sands, and William T. Tamsberg (hereinafter "RICO Defendants").

**12.** Although Defendants bring this claim under the Rule 12(b)(6) failure to state a claim standard, the court notes that a motion to dismiss for failure to join an indispensable party is a Rule 12(b)(7) motion.

**13.** In addition, the C & B Defendants assert that the relevant statute of limitations bars Plaintiffs from bringing Counts VII and VIII against Defendants Paula P. Greer, Kenneth B. Sands, and William T. Tamsberg.

Plan under ERISA §§ 502(a)(2) and 409(a), fail to state a claim upon which relief may be granted because Plaintiffs seek to recover losses that they suffered individually, and because Plaintiffs have not alleged any cognizable "loss to the plan." The court now considers whether Plaintiffs have alleged facts which support a cause of action for recovery of losses to the plan.

Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), provides that either "the Secretary, . . . a participant, beneficiary or fiduciary" of an ERISA-governed plan may bring a civil action "for appropriate relief under section 409 of this Act." Section 409(a), 29 U.S.C. § 1109(a), provides that,

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this Act shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the breaching fiduciary.

■ ERISA § 409(a), 29 U.S.C. § 1109(a). In *Coyne & Delany Co. v. Blue Cross and Blue Shield,* the Court of Appeals for the Fourth Circuit ruled that "[t]he Supreme Court in *[Mass. Mut. Life Ins. Co. v.] Russell* clearly held that any recovery under [ERISA] section 502(a)(2) must be for the plan as a whole rather than for individual beneficiaries." 102

F.3d 712, 714 (4th Cir.1996). As such, according to the terms of ERISA and the governing law of the Fourth Circuit, a plaintiff may only obtain money damages for the benefit of the plan under ERISA §§ 409(a) and 502(a)(2) if he alleges and proves a loss to the plan itself. *See Meyer v. Berkshire Life Ins. Co.,* 250 F.Supp.2d 544 (D.Md.2003), *aff'd,* 372 F.3d 261 (4th Cir.2004).

First, the court agrees with Defendants that ERISA does not authorize participants, such as Plaintiffs, to recover personally for losses that the ESOP suffered due to the actions of the fiduciaries. However, in their Prayer for Relief, Plaintiffs specifically state that they are seeking an Order from this court that "each of the Defendants are liable to the ESOP and Plaintiffs individually for violating the duties, responsibilities and obligations imposed on them as fiduciaries and co-fiduciaries by ERISA. To the extent that recovery under the ERISA claims for breach of fiduciary duties (other than the claim for statutory penalty) can only be received by the ESOP, *this request for relief is made on behalf of the ESOP.*" [Complaint at 25–26 (emphasis added).] Because Plaintiffs specifically state that, where appropriate, they seek relief "on behalf of the ESOP," the court finds that Plaintiffs have stated a cause of action for monetary relief on behalf of the Plan. Plaintiffs also request that this court enjoin Defendants from further violating ERISA, and order such other equitable relief appropriate to remedy Defendants' breaches. [Complaint at 26.] A civil action against the fiduciaries by a participant for equitable relief is clearly authorized by ERISA § 502(a)(3),[14] as well as by §§ 409(a) and 502(a)(2). As such,

---

14. Section 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a civil action also may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this Act or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this Act or the terms of the plan."

because the Complaint alleges facts indicating that Defendants breached their fiduciary duties, and because Plaintiffs specifically seek monetary damages "on behalf of the ESOP," the court finds that Counts I, II, III, and IV adequately state claims, both for equitable relief and for monetary recovery for any proven losses to the plan caused by the breach of Defendants' duties pursuant to ERISA §§ 409(a) and 502(a)(2)-(3).

Defendants argue, however, that Plaintiffs cannot show any "loss to the plan" because the total plan assets immediately before and immediately after the reallocation of C & B ESOP assets remained the same. Therefore, because the parts of the plan assets equal the whole of the plan assets before and after the challenged reallocation, the plan itself suffered no "loss." Defendants admit that the Complaint alleges that the Plaintiffs, as CSI Participants of the C & B ESOP, suffered losses and were disadvantaged due to the inaccurate valuation of CSI stock; however, Defendants argue that losses to individual plan participants are not considered to be "losses to the plan" as required for recovery under ERISA § 409. Absent actual losses to the plan itself, Defendants claim that Plaintiffs have not stated a claim upon which relief may be granted, and asks the court to dismiss Counts I, II, III, and IV of the Complaint.

█ It is well established that the term "losses to a plan," as meant by ERISA § 409(a), should be construed broadly to further the remedial purposes of ERISA. *Difelice v. U.S. Airways, Inc.*, 397 F.Supp.2d 758, 779 (E.D.Va.2005) (citing *Roth v. Sawyer–Cleator Lumber Co.*, 61 F.3d 599, 604 (8th Cir.1995)). Accordingly, the court finds that the Complaint sufficiently alleges actual losses to the ESOPs such that it has stated a claim for mone-

tary relief pursuant to ERISA § 409(a). Specifically, the Complaint asserts that the fiduciaries of the original C & B ESOP exchanged CSI stock allocated to the accounts of the C & B Participants with cash allocated to the accounts of CSI Participants. The value the fiduciaries used for the exchange was allegedly much higher than the real value of CSI stock. Prior to the completion of the merger, the C & B ESOP distributed benefits by cashing out some participants' CSI stock at this inflated value. By using a valuation that overvalued the CSI stock, the C & B ESOP as a whole suffered a loss. In addition, during the spinoff, the amount of plan assets transferred to the CSI ESOP was reduced due to the improper valuation of the CSI stock during the previous exchanges between accounts. As a result of the fiduciaries' failure to adequately investigate the stock's fair market value, the CSI ESOP and its participants allegedly lost significant portions of the cash allocated to the retirement accounts. As with any loss caused by a fiduciary's breach, the losses to the C & B ESOP due to the distribution of benefits at an improper valuation and the diminution in the amount of plan assets transferred to the CSI ESOP constitute losses to a plan under ERISA § 409(a).

█ In this case, Plaintiffs clearly allege that they, as plan participants, and the C & B ESOP and CSI ESOP as a whole suffered losses due to the Defendant fiduciaries' failure to investigate the true value of the CSI stock. Such failure to investigate was a violation of Defendants' fiduciary duties. As such, Plaintiffs have sufficiently alleged losses to a plan caused by a breach of the fiduciaries' duties such that they have stated a claim for recovery of losses to the plan under ERISA § 409(a).

**B. Counts I, II, III, and IV—Accepting all well-pleaded allegations in the Complaint as true, must Plaintiffs' claims for equitable relief under ERISA be dismissed for failing to join indispensable parties?**

Defendants note that, according to the terms of the Complaint, the cash and assets of the CSI ESOP allegedly mishandled by the fiduciaries have been either distributed or allocated to the current and former participants of the C & B ESOP, which has been merged into the Hagemeyer Plan. These distributions and allocations allegedly "resulted in a profits wind-fall to certain current and past executives and employees of C & B and these transactions were conducted at the expense of persons such as the Plaintiffs, who were left with CSI stock that is nearly worthless." [Complaint ¶ 47.] The Complaint does not allege that any of Defendants personally received a profits wind-fall or received any of the cash and assets of the CSI ESOP. For this reason, Defendants assert that they are incapable of equitably restoring Plaintiffs' lost benefits; therefore, complete equitable relief cannot be granted to Plaintiffs unless all current and former participants to the C & B ESOP are joined as defendants. Defendants further assert that the interests of these participants to the C & B ESOP would be jeopardized if they are not joined in this litigation. Accordingly, Defendants seek to have Plaintiffs' causes of action under ERISA for equitable relief be dismissed for failure to join indispensable parties under Rule 19(a).

■ Rule 12(b)(7) of the Federal Rules of Civil Procedure allows a court to dismiss an action for failure to join a party in accordance with Rule 19. *See, e.g., RPR & Assocs. v. O'Brien/Atkins Assocs.*, 921 F.Supp. 1457, 1463 (M.D.N.C.1995); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1359 (3d ed. 2004) ("Rule 12(b)(7) permits a motion to dismiss when there is an absent person without whom complete relief cannot be granted."). On a Rule 12(b)(7) motion, the court initially determines if the absent party should be joined as a necessary party in accordance with the criteria set forth in Rule 19(a)(1). *See RPR*, 921 F.Supp. at 1463. Under this rule, a party is "necessary" if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. Fed. R. Civ. Pro. 19(a). When making that determination, the court must base its decision on the pleadings as they appear at the time of the proposed joinder. *Associated Dry Goods Corp. v. Towers Financial Corp.*, 920 F.2d 1121, 1123–24 (2d Cir.1990) (citing 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1608 (3d ed.2001)); *La Chemise Lacoste v. General Mills, Inc.*, 53 F.R.D. 596, 601 (D.Del.1971), *aff'd*, 487 F.2d 312, 314 (3d Cir.1973). If a court determines that a person is necessary under Rule 19(a), and if joinder of that person is impossible due to jurisdictional or equitable limitations, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed under Rule 12(b)(7), the absent person being thus regarded as indispensable. Fed. R. Civ. P 19(b).

■ In this case, the court finds that the joinder of the current and former C & B ESOP plan participants is not necessary to ensure that complete relief may be granted in this litigation. Although Defendants cannot equitably restore to the CSI ESOP the actual assets lost due to their breaches of duty, ERISA provides that Defendant fiduciaries are *personally* liable for all such "losses to the plan." ERISA § 409(a), 29 U.S.C. § 1109(a). As such, Plaintiffs may completely recover for the losses to the plan directly from Defendant fiduciaries without disturbing the interests of the current and former participants to the C & B ESOP. Because the court finds that equitable restitution of Plaintiffs' actual lost benefits is not the only means by which complete relief may be granted, the failure to join those persons who allegedly possess the actual lost benefits is not fatal to this action. Other relief as may be just and proper in equity, including enjoining Defendants from further violating ERISA, may be appropriate under the facts as alleged in the Complaint; accordingly, the court finds that Plaintiffs' claim for equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) may be completely satisfied in the absence of the participants in the C & B ESOP. The court further finds that continuing this litigation in the absence of the C & B ESOP plan participants would not expose Defendants to a substantial risk of incurring multiple or otherwise inconsistent obligations or that it would threaten the rights of the C & B ESOP plan participants. As such, the court finds that the current and former participants in the C & B ESOP are not necessary parties under Rule 19(a), and that therefore dismissal under 12(b)(7) is not required.

**C. Count VI—Accepting all well-pleaded allegations in the Complaint as true, can Plaintiffs recover for their expenses in this litigation under a quantum meruit theory of recovery?**

■ Quantum meruit recovery is an equitable remedy relied upon by the courts to correct the situation in which a defendant to an action has retained a benefit conferred by a plaintiff without paying to the plaintiff the fair value. *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach,* 341 S.C. 1, 532 S.E.2d 868, 872 (2000). In such cases, the court, using its equitable powers, may order the defendant to pay to the plaintiff the value of the benefit conferred in order to prevent unjust enrichment. *Id.* Applying this logic to the case at hand, Plaintiffs allege that they have conferred a benefit upon the C & B ESOP by bringing and prosecuting this action on its behalf. Plaintiffs claim that it would be unjust for the ESOP to retain the benefit of this litigation without compensating Plaintiffs for the time and effort they have spent on its behalf. For this reason, Plaintiffs request that the ESOP pay the value of the benefit it receives from Plaintiffs' bringing this action on its behalf.

■ The court finds that Plaintiffs have not stated a valid claim for quantum meruit recovery. If Plaintiffs are ultimately successful, ERISA provides that the court may, in its discretion, award reasonable attorney's fee and costs of the action under ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1).[15] In addition, the court must award post-judgment interest and may, in its discretion, award prejudgment interest. *Quesinberry v. Life Ins. Co. of N. America,* 987 F.2d 1017, 1031 (4th Cir.1993). In addition to this statutory recovery, Plaintiffs assert a quantum meruit claim in

**15.** 29 U.S.C.A. § 1132(g)(1) provides that "[i]n any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

order to recover from the ESOP additional costs "not specifically provided for" under ERISA. [Opp. to GreatBanc's Motion to Dismiss at 10.] Such recovery against the ESOP for costs of the litigation was clearly not the intent of Congress, however, which provided in ERISA § 502(g)(1) that the liable *Defendant fiduciaries* bear the expense of the litigation by paying attorney's fees and costs of the litigation in appropriate situations. For this reason, the court finds that Plaintiffs' claim for quantum meruit recovery of their litigation expenses attempts to supplement or supplant the remedies expressly available under ERISA. According to the Supreme Court, "Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 216, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). In such situations, the state or common law remedy is preempted by the remedy as provided in ERISA. *Id.* The court therefore finds that Plaintiffs' claim for quantum meruit recovery is preempted by ERISA § 502(g)(1). Because Plaintiffs have not stated a valid claim for recovery under a quantum meruit theory, the court dismisses Count VI of the Complaint accordingly.[16]

**D. Count VII—Accepting all well-pleaded allegations in the Complaint as true, have Plaintiffs alleged facts that support a claim under Section 10(b) of the Securities Exchange Act of 1934?**

■■■ To establish liability under Section 10(b) of the Securities Exchange Act,

a plaintiff must prove that *in connection with the purchase or sale of a security:* (1) defendants made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiffs justifiably relied (4) that proximately caused plaintiff's damages. *Longman v. Food Lion, Inc.,* 197 F.3d 675, 682 (4th Cir.1999) (emphasis added); *Hillson Partners Ltd. P'ship v. Adage, Inc.,* 42 F.3d 204, 208 (4th Cir. 1994).

Defendants assert that Plaintiffs have not alleged facts that establish liability under the federal securities laws because Plaintiffs' participation in the C & B ESOP, a compulsory, noncontributory employee benefit pension plan, does not constitute "the purchase or sale of a security" under the Securities Act of 1933 or the Securities Exchange Act of 1934. In *International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Daniel,* 439 U.S. 551, 558–559, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979), the Supreme Court found that a non-contributory, compulsory pension plan does not constitute a "security" within the meaning of the federal securities laws. Accordingly, the Supreme Court held that a complaint which alleged that the trustees of a non-contributory, compulsory pension plan have violated the anti-fraud provisions of the Securities Act and the Securities Exchange Act did not state a claim upon which relief could be granted. *Daniel,* 439 U.S. at 559, 99 S.Ct. 790; *see also Bauman v. Bish,* 571 F.Supp. 1054, 1064 (D.C.W.Va.1983) ("It is the opinion of the Court that no offer, sale, or purchase occurs with the operation of an ESOP as contemplated by the securities laws.").

■■■ As an initial matter, the court finds that Plaintiffs' participation in the

---

**16.** In their Prayer for Relief, Plaintiffs request "[t]hat this Court award to Plaintiffs reasonable costs and attorneys' fees." [Complaint at

26.] The court understands this request as one for relief under ERISA § 502(g), 29 U.S.C. § 1132(g).

original C & B ESOP was compulsory and non-contributory. Under the C & B ESOP plan document, which is incorporated by reference into the Complaint,[17] an employee automatically became a "participant" in the C & B ESOP after one year of employment, and the ESOP "does not permit or require Participant voluntary contributions." [C & B Plan Document, §§ 2.01, 4.01.] Because each participant who meets certain minimum hours of service requirements had stock allocated to his or her account, participation in such a plan for employees was not voluntary, and was, in a sense, compulsory. *Bauman,* 571 F.Supp. at 1064. Thus, the participants in the C & B ESOP made no affirmative investment decision. *Id.* More importantly, because the plan did not require contributions, the participating employees furnished no "value" in exchange for the stock they acquire through the plan. *See* 15 U.S.C. § 77b(3). Instead of giving up some tangible and definable consideration, participants earned stock through labor for the employer. *Bauman,* 571 F.Supp. at 1064. The notion that the exchange of labor suffices to constitute the type of investment which the Securities Acts were intended to regulate was rejected by the Supreme Court in *Daniel,* 439 U.S. at 559–561, 99 S.Ct. 790. As such, the court finds that Plaintiffs' participation in the C & B ESOP was compulsory and non-contributory.

Because Plaintiffs were participants in a compulsory and non-contributory ESOP, just as were the plaintiffs in *Daniel,* Defendants argue that Plaintiffs have not stated a claim under the federal securities laws. In response, Plaintiffs do not contest that their participation in the C & B ESOP was non-contributory and compulsory; however, Plaintiffs argue that the Complaint alleges facts which distinguish this case from the case in *Daniel.* The Complaint alleges that, at the time of the merger, plan participants were given choices regarding the investment of their assets. Specifically, C & B ESOP participants had a right to vote on the proposed merger of C & B and Hagemeyer. [Complaint ¶ 99.] Plaintiffs assert that the merger plan was, in effect, a sale of assets such that the participants' voting on the merger constitutes a sale or purchase of securities. Further, upon consummation of the merger, Plaintiffs claim that C & B Participants, but not CSI Participants, were "given the option" of rolling over their share of the distribution into either a "401(k) plan or an individual retirement account." [Complaint ¶¶ 37, 99(i).] In so doing, Plaintiffs allege that these participants made a voluntary decision regarding the placement of their assets such that this case is distinguishable from the case in *Daniels.* Because the Complaint alleges that plan participants made decisions that affected the disposition of their securities, Plaintiffs assert that they participated in "the purchase or sale of a security" such that they are protected by federal securities laws.

The court disagrees. Regardless of whether participants voted on the merger plan or were "given the option" of rolling over their share of the distribution into either a 401(k) plan or an individual retirement account, the Complaint does not allege that Plaintiffs ever exchanged "value"

---

17. Relevant sections of the C & B ESOP plan document are attached to GreatBanc's Motion to Dismiss. Even if a "plaintiff does not attach to the complaint or incorporate by reference written materials which are integral to the allegations of the complaint," the court may rely upon those materials without converting the motion for dismissal into a motion for summary judgment. *In re FAC Realty Securities Litigation,* 990 F.Supp. 416, 420 (E.D.N.C.1997).

or invested money at the time of making these decisions. The failure of participants to exchange some "value" at that time precludes the view that voting in the merger or choosing the form of certain benefits plans constitutes a "sale." *See Bauman,* 571 F.Supp. at 1064; 15 U.S.C. § 77b(3). As such, the Complaint does not allege that participants of the C & B ESOP, including Plaintiffs, participated in an offer, sale, or purchase of securities. For this reason, it is the opinion of the court that, even assuming all facts as alleged in the Complaint are true, Plaintiffs have no claim under the securities laws. The court therefore dismisses Count VII of the Complaint for failing to state a claim upon which relief may be granted.

**E. Count VIII—Accepting all well-pleaded allegations in the Complaint as true, have Plaintiffs alleged facts that support a claim under RICO?**

■ A violation of § 1962(c), the section on which Plaintiffs rely, requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.[18] *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (U.S.1985). The plaintiff must, of course, allege each of these elements to state a claim under RICO. *Id.* Conducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, nor is mere commission of the predicate offenses. *Id.* In this case, Defendants assert that Plaintiffs fail to allege facts whereby the court could infer that the RICO Defendants' conduct constituted a "pattern" of racketeering activity.

■ In order to constitute a "pattern of racketeering activity," Plaintiffs must allege that the RICO Defendants committed predicate acts that are "related *and* that they amount or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (emphasis in original). It therefore must be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity. *Id.* at 240, 109 S.Ct. 2893.

As the Supreme Court explained,

"Continuity" is both a closed- and open-ended concept, referring either to a

---

18. In relevant part, RICO defines "racketeering activity" to mean:

(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... section 664 (relating to embezzlement from pension and welfare funds) ... (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States), or section 278 (relating to importation of alien for immoral purpose) if the act indictable under such section of such Act was committed for the purpose of financial gain, or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B). 18 U.S.C. § 1961(1).

closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *See Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36, 39 (C.A.3 1987). It is, in either case, centrally a temporal concept-and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship* these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. *Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement:* Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated. See S.Rep. No. 91–617, at 158.

*Id.* at 241–42, 109 S.Ct. 2893 (emphasis added).

Assuming, as the court must, that allegations in the Complaint are true, the court finds that the Complaint does not establish that the RICO Defendants' predicate acts satisfy the requisite continuity. In the Complaint, Plaintiffs allege that Defendants engaged in racketeering activity by violating 18 U.S.C. § 664, which makes it a crime to embezzle, steal, or unlawfully

and willfully abstract moneys, securities or funds from an employee welfare benefit plan.[19] [Complaint ¶ 106.] Plaintiffs did not directly allege what acts allegedly constituted embezzlement or conversion, who committed these acts, when the acts were done, or by whom; however, it is clear, in connection with Plaintiffs' other factual allegations, that the predicate act was a "a conspiracy to defraud Plaintiffs" by overvaluing the CSI stock and then allocating this stock in conjunction with the merger of C & B and Hagemeyer. As a result of this scheme, the retirement funds of CSI Participants, including Plaintiffs, were depleted, while the accounts of the C & B Participants received a wind-fall. This case presents, as Plaintiffs themselves describe it, an alleged scheme for the single goal of defrauding Plaintiffs of the value of the CSI stock during the merger and spinoff of the C & B ESOP. The courts, however, "have repeatedly recognized that such schemes involving fraud related to the sale of a single enterprise do not constitute, or sufficiently threaten, the 'long-term criminal conduct' that RICO was intended to address." *GE Inv. Private Placement Partners II v. Parker,* 247 F.3d 543, 549 (4th Cir.2001); *see, e.g., Vicom, Inc. v. Harbridge Merch. Serv., Inc.,* 20 F.3d 771, 782–83 (7th Cir.1994) (finding no pattern where the defendants engaged in fraud against thousands of merchants but the fraud was designed to inflate the company's net worth); *Banks v. Wolk,* 918 F.2d 418, 423 (3d Cir.1990) (finding no pattern where the defendant engaged in

---

19. 18 U.S.C. § 664 provides:

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined under this

title, or imprisoned not more than five years, or both.

As used in this section, the term "any employee welfare benefit plan or employee pension benefit plan" means any employee benefit plan subject to any provision of title I of the Employee Retirement Income Security Act of 1974.

fraud to affect the purchase price of a single building). Where, as in this case, the fraudulent conduct is part of the merger and sale of a single enterprise, "the fraud has a built-in ending point, and the case does not present the necessary threat of long-term, continued criminal activity." *Parker*, 247 F.3d at 549. In addition, the Complaint does not allege that the RICO Defendants have engaged in similar schemes involving other enterprises, nor does it allege that this conduct was the RICO Defendants' regular way of conducting business. For these reasons, the Complaint fails to allege facts whereby the court could infer that the predicate violation constitutes a threat of continued racketeering activity. As such, according to the facts as alleged in the Complaint, the conduct of the RICO Defendants does not constitute a "pattern" as required by RICO.

Defendants also argue that the Complaint fails to state facts that support a violation of 18 U.S.C. § 664, and that the Private Securities Litigation Reform Act, which removed securities fraud as a predicate act under RICO, bars Plaintiffs from asserting that the alleged conduct constitutes a "predicate act" under RICO. Pub.L. 104–67, § 107, 109 Stat. 758, amending 18 U.S.C. § 1964(c); *see also Anza v. Ideal Steel Supply Corp.*, —— U.S. ——, ——, ——, 126 S.Ct. 1991, 2005, 164 L.Ed.2d 720 (U.S.2006). However, because the court finds that the alleged predicate acts do not constitute a "pattern of racketeering activity," an essential element of a RICO cause of action has not been satisfied; therefore, the court dismisses Count VIII without considering Defendants' additional arguments.

### CONCLUSION

In this case, the Complaint asserts that the Defendant fiduciaries, who include all Defendants except the CSI ESOP and the Hagemeyer Plan, breached their duties of care and loyalty by failing to investigate the valuation of CSI stock, a C & B ESOP asset. As such, Plaintiffs describe breaches of the fiduciary and co-fiduciary duties imposed by ERISA §§ 404(a)(1)(A)-(D) and 405, 29 U.S.C. §§ 1104(a)(1)(A)-(D) and 1105. Therefore, Plaintiffs state claims under ERISA §§ 502(a)(3), 29 U.S.C. 1132(a)(3), for equitable relief to remedy these breaches of fiduciary duty. The Complaint further alleges that the Defendant fiduciaries' violations of their duties resulted in real losses to the C & B ESOP and the CSI ESOP. As such, Plaintiffs state claims for recovery of losses to the ESOPs from the responsible fiduciaries, pursuant to ERISA §§ 409(a) and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2). It is uncontested that Plaintiffs sufficiently state a claim against Defendant CSI under ERISA § 502(c); 29 U.S.C. § 1132(c). Accordingly, because Counts I, II, III, IV, and V of the Complaint state claims upon which relief may be granted, the court **DENIES IN PART** Defendants' Motions to Dismiss.

The court finds, however, that the facts as alleged in the Complaint do not support claims against Defendants for engaging in transactions prohibited by Section 10(b) of the Securities Exchange Act, 17 C.F.R. § 240. 10(b)(5), or prohibited by the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c). Further, Plaintiffs are not entitled to recover the quantum meruit value of their services in bringing the ERISA causes of action in addition to that recovery provided by ERISA. For these reasons, the court **GRANTS IN PART** Defendants' Motions and **DISMISSES** Counts VI, VII, and VIII of Plaintiffs' Complaint.

**AND IT IS SO ORDERED.**